McLane *v.* Chancey, Administrator.

4-8090, 4-8091 (consolidated)                     200 S. W. 2d 782

Opinion delivered March 17, 1947.

Rehearing denied April 21, 1947.

*Carter & Taylor* and *J. M. Smallwood,* for appellant.

*Mark E. Woolsey,* for appellee.

Holt, J.   Two causes of action, consolidated here, are presented on this appeal from separate judgments in the Franklin Probate Court, Ozark District, construing the separate wills of William C. Bill, deceased, and Ada May Bill, deceased, who were husband and wife.   Mr. Bill died May 20, 1945, and Mrs. Bill, his widow, died May 22, 1945.   Each was approximately 70 years of age at the time of death and had resided in Ozark approximately 50 years.   No issue survived.

Their separate wills were, in effect, almost identical, that of Mrs. Bill having been executed May 30, 1940, and that of Mr. Bill, December 8, 1942.

That part of Ada May Bill's will, material here, is as follows: "To Bertie Walker McLane, I give, devise, and bequeath my home place together with all the personal property therein, located on lots 7, 8, 9 and 10, all in block 16, in the Town of Ozark, Arkansas.

"Then after all expenses are paid, if anything remains, real estate, personal property, or mixed, money or any other valuable assets, shall be gathered together by a trustee, selected by the parties interested and named in this will and approved by the court having jurisdiction and shall be equally divided between the following persons and institutions: The First Methodist Church of Ozark, Arkansas. Mrs. Louella Rice. Mrs. Bessie Hail Travis."

That part of William C. Bill's will, material here, is identical with the above provisions of Mrs. Bill's will except that the word "place" after the words "my home" is omitted in his will so that it reads "my home, together," etc.

The appellant, Bertie Walker McLane, is in no way related to either Mr. or Mrs. Bill.

When appellant, Bertie Walker McLane, took charge of the home given to her under both wills, following the deaths of Mr. and Mrs. Bill, she found in a lock box in the home six Postal Savings Certificates in the aggregate amount of $1,800 and an insurance policy in the amount of $2,000 on the life of William C. Bill. There was in the garage on the place a Chevrolet automobile. There was also discovered a contract of sale for a portion of the home place, "part of lot 6 and all of lots 7 and 8, block 16, Town of Ozark, Arkansas," that had been entered into during the life of William C. Bill with Ernest Moore and Lou Ollie Moore, and their note in the amount of $700 given for the purchase price of this property.

J. P. Chancey, administrator of Mrs. Bill's estate, filed petition, with her will annexed, in the probate court for directions as to disposition of the proceeds from the life insurance policy on the life of William C. Bill, payable to his wife, Ada May Bill, "if she should survive him, otherwise to insured's administrator." He alleged that appellant, Mrs. McLane, was claiming all the proceeds from this policy, and each of the residuary legatees, the church, Mrs. Travis and Mrs. Rice, who had been made parties, were each claiming a third interest in the proceeds from said policy.

Following a trial, the probate court found that the proceeds from this policy of insurance should be divided equally among the three residuary legatees, the First Methodist Church of Ozark, Mrs. Katherine Hail Travis and Mrs. Louella Rice, share and share alike. From the judgment of the court, Mrs. McLane has appealed.

On the same date that the administrator filed the petition, *supra,* in the Ada May Bill's estate, he also filed a separate petition in the William C. Bill's estate for instructions and directions from the probate court, (1) to whom he should pay the proceeds from the Postal Savings Certificates, (2) who was entitled to the automobile found in the garage, and (3) who was entitled to the $700 promissory note.

It appears that in 1939, Mr. Bill opened a Postal Savings account with the Post Office in Ozark and at the time of his death, as above indicated, six certificates evidencing this account in the Post Office were found in the home.

All of this property was claimed by appellant, Mrs. McLane, under the will, *supra.* The three residuary legatees were made parties to this action also.

Upon a trial of this cause, the probate court found that the proceeds from the Postal Savings Certificates should be divided equally among the three residuary legatees, the church, Mrs. Rice and Mrs. Travis, one-third to

each, but that appellant should have the automobile and the $700 note.

From this judgment, Mrs. McLane has appealed. The appellees, the three residuary legatees, have cross-appealed from that part of the judgment awarding the car and note to appellant.

In short, it is the contention of Mrs. McLane here that under the terms of the wills, *supra,* since she was given the "home place, together with all the personal property therein," this provision carried with it not only the home, but that "personal property" included the proceeds from the insurance policy, the Postal Savings Certificates, the automobile and the promissory note. She was, as above noted, awarded the automobile and the note, but denied any interest in the insurance policy and the Postal Savings Certificates.

Was the term "personal property therein," broad enough to include, as appellant contends, not only the note and the automobile, but the proceeds from the Postal Savings Certificates and the insurance policy which were choses in action? We do not think it was, in the circumstances here, and it is our view that the judgment of the trial court was in all things correct. The insurance policy and the Postal Savings Certificates were choses in action purely.

One of the cardinal rules in construing a will is to ascertain the intention of the testator. This must be done from all the language within the four corners of the will according to the meaning of the words used, as was said by this court in *Wooldridge* v. *Gilman,* 170 Ark. 163, 279 S. W. 20: "The primary rule of construction in the interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole will and a comparison of its various clauses in the light of the situation and circumstances which surrounded the testator when the instrument was executed," and as expressed in *Lockhart* v. *Lyons,* 174 Ark. 703, 297 S. W. 1018: "The

true rule in the construction of wills, which can be said to be paramount, is to ascertain or arrive at the intention of the testator from the language used, giving consideration, force and meaning to each clause in the entire instrument.'' (Citing many cases.)

In the very recent case of *Quattlebaum* v. *The Simmons National Bank, Administrator,* 208 Ark. 66, 184 S. W. 2d 911, we said: "In the recent case of *Dickens* v. *Tisdale,* 204 Ark. 838, 164 S. W. 2d 990, we said: 'All the cases are to the effect that the primary purpose of construing a will is to arrive at the testatrix's intention in making it, and the rule of construction applicable in all cases is that the will should be read in its entirety, from its four corners, as many cases express the thought;' . . . and in *Duensing* v. *Duensing,* 112 Ark. 362, 165 S. W. 956, this court said: 'The cases all agree that the testator's intention can be gathered only from the will itself and that extrinsic evidence is not admissible to prove an intention in regard to the disposition of the property not expressed in the will.' ''

Again, in the case of *Wilson* v. *Storthz,* 117 Ark. 418, 175 S. W. 45 (headnote 1), the court held: "The testator's intention must be gathered from the will, and, while evidence may be received to explain any ambiguity in the designation of a beneficiary, yet neither the scrivener, nor anyone else, however closely related to the testator, can be permitted to testify that the testator meant or intended any disposition of his property not expressed in the will."

When the wills of Mr. and Mrs. Bill are considered in their entirety, giving full meaning, purpose and effect to every part thereof, we think they are clear and unambiguous, and manifest the intention of these two fine old people to give to appellant, related to them in no way, the home place where they resided, together with all "personal property" in the home, which "personal property" in its usual sense and common meaning, carried only the usual and ordinary household effects, and did not include the insurance policy and the Postal Savings Certificates

which were choses in action, or evidences of the right to claim the actual money or property, not in the home, which they represented.

In 17 C. J. S., p. 175, under the phrase, "contents of the house not otherwise hereinafter bequeathed," under reference to footnote 15, we find this language: "15. Choses in action not included. In determining whether or not a bequest couched in the language of the quoted phrase passed the contents of a small safe, found in the house and containing jewelry, savings bank books, and insurance policies, having a surrender or transfer value, the court held the articles of jewelry embraced by the phrase, but not the savings bank books or insurance policies, since choses in action, are not to be considered as contents of a house. *Old Colony Trust Co.* v. *Hale,* 302 Mass. 68, 18 N. E. 2d 432."

In *Webster* v. *Wiers,* 51 Conn. 569, the court there said: "The question presented by this case is with regard to the construction to be given to a clause of the codicil to the will of Lucy Churchill which is as follows:

" 'I give and bequeath to my grand-nephew, Milton W. Woodford, all my household effects, books and papers of value, and everything the house contains, the same to be taken by him without inventory or appraisal, to be his and his heirs' forever.' . . .

"It would be a very unnatural thing that a testator should describe such property, and of such value, merely as household effects and as a part of all the house contained, or even as books and papers of value. It is hardly credible that a particular allusion to them should not have been made if she had intended to embrace them in the bequest. We are of the opinion that the note and savings bank book, with the deposits represented by the latter, did not pass by the codicil to Milton M. Woodford, but that they became a part of the residue provided for in the original will."

In 3 Page on Wills, 3d (Lifetime Ed.), § 970, we find the rule stated as follows: "Sec. 970. Money and Choses

in Action described by Location. . . . Choses in action have no locality, although the ecclesiastical courts had held that their presence gave jurisdiction for administration. They are only evidences of obligations. For these reasons, it has been held that a gift which is, by its terms, broad enough to include choses in action, and which describe the property as located in a certain place, does not pass choses, although the written evidence thereof is situated in such place. A gift of 'securities' in a certain vault does not pass a bank account, although the bank book was kept in such vault,'' and in Rood on Wills, 2d Ed., § 517, under the subject of Personal Property Described by Location, ''Securities Found in the Place,'' the text writer said: ''The danger of describing personal property by location has often been observed. It may comprehend much today and nothing tomorrow; and the effect may be changed by honest or fraudulent removals without the testator's knowledge or consent. A gift of the contents of a house will seldom if ever pass choses in action evidenced by notes, bonds, or other securities found there; and all the more clearly land would not pass by reason of a deed of it being found there. But coins and current paper money have generally been held to pass. And a gift of the contents of some place where such valuables are usually put for safe keeping, such as the contents of a safety deposit box, would include not merely the pen, pencils, and jewelry there found, but all choses in action evidenced by securities found there, though not transferable without indorsement.''

In the case of *Old Colony Trust Company* v. *Hale*, Mass., 302 Mass. 18 N. E. 2d 432, 120 A. L. R. 1207, decided in 1939 by the Supreme Court of Massachusetts, it was said: ''The first clause of the will of the testatrix provides as follows: 'I give to Mrs. Harriet C. Hale, my cousin, now of 22 Arnold Street, Northampton, Massachusetts, two hundred thousand dollars ($200,000); also my house and land situated at 10 Beech Road, Brookline, Massachusetts, and the contents of the house not otherwise hereinafter bequeathed; also my silver now in the vaults of the Bay State Trust Company; also all my rugs

now stored in the Boston Storage Warehouse not otherwise hereinafter bequeathed; also my large bar pin with eleven diamonds; and also my diamond semi-neckless with a diamond heart attached.' . . .

"After the death of the testatrix there were found in a small safe in her house at 10 Beech Road, 'among other items of personal property,' three savings bank books representative of total deposits of $8,433.36, fire and other insurance policies covering the premises and its contents and having a transfer value of $228.48, policies of automobile insurance which were surrendered by the petitioners, who received $53.62, the surrender value thereof, and articles of jewelry appraised at $471. The jewelry that was specifically bequeathed to the respondent by the will was not in the house at 10 Beech Road when the testatrix died, but was in a safe deposit vault.

"The sole question for decision is whether the contents of the safe pass under the devise and gifts of the 'house and land situated at 10 Beech Road . . . and the contents of the house not otherwise hereinafter bequeathed' to the respondent. . . .

"Where, as in the case at bar, the bequest is simply of the 'contents of the house' not otherwise disposed of in the will, the word 'contents,' being a word of comprehensive meaning, must receive its full import unless some very distinct ground can be derived from the context, and a consideration of the will as a whole in accordance with the settled rule governing its construction . . . for regarding it as used in a special and restricted sense. . . . It is the general rule, however, that choses in action will not pass under a bequest of the contents of a house. (Citing cases.) . . .

"In *Popham* v. *Aylesbury,* 1 Ambl. 68, 69, also cited in *Stuart* v. *Marquis of Bute,* 11 Ves. 657, 662, a bequest of 'my house and all that shall be in it at my death,' was held to pass cash and bank notes found in the house, but not to pass promissory notes and securities, as they were evidence of title to things out of the house and not things in it."

As to the automobile found in the garage, we think little need be said. We think the trial court correctly held that this was personal property within the home, within the meaning of the language used in both wills.

We also think that the $700 note was properly awarded to appellant. It appears that W. C. Bill, subsequent to the execution of the wills, entered into a contract to sell a part of the real property, which he had devised to appellant, to Everett Moore. No deed was ever executed, but a bond for title and the note for the balance of the purchase price had been. The legal title, therefore, to the property sold to Moore passed to appellant, Bertie Walker McLane, subject to the right of Moore, who, when he paid the purchase price to appellant, would be entitled to a conveyance of the legal title, the devise of this property to her under the wills never having been revoked. Such is the effect of § 14522, Pope's Digest, which provides:

*"Devise while testator under contract to convey.* A bond, agreement or covenant, made for a valuable consideration by a testator to convey any property devised or bequeathed in any last will and testament previously made, shall not be deemed a revocation of such previous devise or bequest, either in law or equity, but such property shall pass by the devise or bequest subject to the same remedies, on such bond, agreement or covenant, for the specific performance or otherwise against the devisees or legatees as might be had by law against the heirs of the testator or his next of kin, if the same had descended to them."

Finding no error, the judgment is affirmed both on direct and cross-appeal.