In the Matter of the Construction of the Will of ALVERETTA FALVEY, Deceased. THE PEOPLE OF THE STATE OF NEW YORK, Appellant; NORMA W. McGRATH, Respondent.

Fourth Department, February 15, 1962.

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon, Paxton Blair* and *Herman F. Nehlsen* of counsel), for appellant.

*Melvin & Melvin (Charles H. Thompson* of counsel), for respondent.

GOLDMAN, J.  In this construction proceeding, the Attorney-General seeks to enforce a charitable trust pursuant to subdivision 3 of section 12 of the Personal Property Law and appeals from a decree of the Onondaga County Surrogate which determined that the testatrix intended to devise and bequeath to the petitioner-respondent not only the residence and land known as 713 Bear Street, Syracuse, New York, but also all property found therein including United States Savings Bonds, which were a substantial part of her estate.  This case was previously

before us (7 A D 2d 476) upon an appeal from an order of the then Surrogate who determined that the respondent should receive all of the bonds found in decedent's home. No testimony was taken concerning the assets and liabilities of the estate, the manner of or the reasons for the removal of the bonds from decedent's safe-deposit box to her home. Our Presiding Justice's opinion on the prior appeal indicated the need for such testimony and the case was " remitted to the Surrogate to take testimony in relation to the various relevant facts and circumstances involved ". As a result of the testimony taken before the present Surrogate, it is clear that if the bonds are to be included within the devise of the real estate, there will be no assets available for the setting up of a charitable trust in decedent's name.

This appeal raises the question whether a bequest of a house and its contents includes everything found within the house at the time of death, including securities. The volume of litigation in all jurisdictions arising from the construction of wills which bequeath a house and its contents should make drafts-men particularly conscious of the necessity of care in expressing the intention of the testator in clear language. Language, like all other symbols, will always be imperfect in representing the concepts of the human mind but we submit that statements of a testator's intent should be expressed in simple and direct language.

A bequest of house and land, together with all fixtures, furnishings and all property of whatsover nature found therein, would on its face appear all-embracive. However, it is too inclusive in its terms and is anomalous if it covers a conglomerate of various types of interests in property and disregards other significant facts. Often the determinative factor in deciding title to property hinges on where it is or when an event took place. If the dispositive provisions in respect of the house and contents in the instant will comprehend all of the testatrix' property, another portion of her will, which manifests an intention of setting up a charitable trust, is rendered ineffective because of lack of available assets. Considering the circumstances surrounding the drafting and execution of the will and that which transpired subsequent to its execution, and reading the will in its entirety in accordance with well-established canons of construction, we cannot agree that the testatrix contemplated the disposition of her entire estate to respondent thereby preventing the establishment of a charitable trust.

Decedent's will was probated December 14, 1956 and named Norma Winifred McGrath, the respondent herein, executrix.

The will was written in the respondent's handwriting and was drafted by her using as a model a prior instrument prepared by an attorney.

The testatrix rented a safe-deposit box to which in June, 1955 she gave the respondent power of attorney. The United States Savings Bonds were removed from the safe-deposit box by respondent at various times subsequent to the execution of decedent's last will. Respondent allegedly delivered them to the testatrix and they were kept in a metal box in a closet in decedent's home where they were found after decedent's death.

At issue is the construction of the following clauses of the will: "I give and bequeath to Norma Winifred McGrath * * * my residence and land known as 713 Bear Street, Syracuse, New York, together with all fixtures, furnishings and all property and articles of whatsover nature found therein, to belong to the recipient absolutely and forever, this bequest being made because either Norma Winifred McGrath or Joyce McGrath have cared for me and stayed with me as a companion in my home upon my request." A later paragraph which the Surrogate determined was not a valid residuary clause reads: " After payment of the above legacies above mentioned, I wish to establish the ' Margaret Falvey Memorial Fund ' to be used for needy educational purposes and for elderly women who are in need of hospitalization but are without funds or families and at the discretion of Norma Winifred McGrath, my executor."

The will which was used as a model for the last testamentary instrument contained specific bequests and the " Tenth " clause provided as follows: " After payment of the specific legacies herein mentioned, I give, devise and bequeath all the rest, residue and remainder of my estate * * * to Syracuse University, an educational institution at Syracuse, New York, absolutely, and forever, it being my desire that the Trustees of Syracuse University establish a fund to be known as the ' MARGARET FALVEY FUND ', and that such fund be used to provide scholarship assistance to be paid from the income thereof for worthy female students who shall be residents of Onondaga County and communicants of a Presbyterian Church."

The Surrogate determined from the language of the will as compared with that of the earlier instrument, together with the testimony taken, that during the period of time between the execution of these two instruments, the intention of the testatrix changed so that she desired substantially to increase her bequest to respondent and to make that bequest uncondi-

tional; that her interest in education had waned and that her interest in elderly women had increased; that her trust and confidence in respondent's discretion had overshadowed her interest in Syracuse University. He also found that respondent was to some extent a natural object of the testatrix' bounty. The rule of *ejusdem generis* was disregarded on the ground that the will should not be construed as strictly as one drafted by an attorney and also because the phrase " of whatsoever nature " following the general words " all property and articles " negated the applicability of this rule of construction. The Surrogate disregarded this canon also on the ground that there was no valid residuary clause.

It is difficult and hazardous to construe a particular will in the light of decisions on other wills, whether those wills are framed in similar or different language. The paramount and actually the only basic rule in construction proceedings is the ascertainment of the intention of the testator. (*Matter of Fabbri*, 2 N Y 2d 236; *Matter of Gautier*, 3 N Y 2d 502; *Matter of Larkin*, 9 N Y 2d 88.) Rules of construction should be used but their application should not be arbitrary. On the contrary, discretion must be exercised in the application of these rules to particular cases. (Ann. 137 A. L. R. 212; Ann. 162 A. L. R. 1134, Annotations on Bequest of Personal Property.) However, once the facts establish that a particular canon of construction is applicable, it should not be lightly disregarded. A proper balance must be struck between exclusive reliance on the canon of construction which, ultimately, is only an aid in determining intent, and, on the other hand, the circumstances surrounding the execution of the will and the beneficiaries of the testator's estate. Rules of construction derive validity from long experience and past history and should not be summarily overriden.

First and foremost, it should be determined if the testatrix had any testamentary scheme or plan. This entails reading the will as a whole. (*Matter of Rooker*, 248 N. Y. 361; *Matter of Durand*, 250 N. Y. 45; *Matter of Larkin, supra*; 3 Restatement, Property, § 242, *Comment* [*c*]; 4 Bowe-Parker Rev. Page, Wills, § 33.43, p. 364.) Thereafter the apparent meaning of particular words, phrases and clauses should be subordinated to the scheme or plan. (*Matter of Fabbri, supra*; *Matter of Larkin, supra*.) Thereupon there is the problem of striking a balance between the technical meaning of words and the obvious intent of the testatrix. Finally, and of great significance, it must be remembered that a document executed as one's last will is an ambulatory instrument. (1 Bowe-Parker Rev. Page, Wills, § 5.17,

p. 208.) A testatrix always has the power to reflect changes in her intention and courts should be cautious in deciding that a testatrix changed her intention and did not reflect such change in a later instrument. Such a holding may remake a will and result in judicial draftsmanship. While it is true a will is not to be construed as strictly when drawn by a layman as when drafted by an attorney (*Overheiser* v. *Lackey,* 207 N. Y. 229), the language of the instant will is not strictly that of a layman.

The words " of whatsoever nature " evidence an intention to leave everything to the named beneficiary. However, when the named beneficiary is the sole executor and also the person who physically drafted the will, the language should leave no room for doubt and should be in conformity with other provisions of the will. (*Forster* v. *Winfield,* 142 N. Y. 327.) It is inescapable that the clause in respect of the memorial fund is meaningless if the respondent's interpretation is accepted.

The Surrogate decided there was no valid residuary clause and this finding constituted an additional ground for his disregard of the rule of *ejusdem generis.* The general rule as to the applicability of this rule of construction is that if general words following an enumeration occur in a residuary disposition, the words will be given the broadest possible meaning in order to prevent intestacy. (*Matter of Reynolds,* 124 N. Y. 388; Ann. 72 A. L. R. 2d 1170.) If there is no residuary clause, the words will also be given their most comprehensive meaning. If there is a residuary clause, and the words appear in another clause, the rule of *ejusdem generis* usually comes into play. (*Matter of Reynolds, supra.*) Stated otherwise, a general description closely connected with an enumeration of property of a more limited type leads to the prima facie inference that the general description is limited by the particular enumeration and that it includes only things of the same general kind. (4 Bowe-Parker Rev. Page, Wills, § 33.43, p. 364; 54 Am. Jur., Trusts, § 57, p. 66.) It is presumed that the testator had only those things of a similar nature in mind. (*Matter of Robinson,* 203 N. Y. 380, 386.)

The residuary clause was held precatory in nature because the words " wish to establish " were coupled with " at the discretion of Norma Winifred McGrath, my executor ". Words expressive of a wish or desire, if so definite as to amount and subject matter as to be capable of execution by a court may and will, if in conformity with the intention of the testator, create a trust. The word " wish " employed by a testator is often equivalent to a command. (*Phillips* v. *Phillips,* 112 N. Y. 197; *Riker* v. *Leo,* 115 N. Y. 93.) The particular words used may be of little import. (1 Bogert, Trusts and Trustees, § 48, p. 344.)

In seeking an answer, the intention of the testator is to be determined from the language of the entire instrument and the conditions and circumstances surrounding its execution. (*Spencer* v. *Childs,* 1 N Y 2d 103, 107; 1 Bogert, Trusts and Trustees, § 48, p. 345.) The fact that the trustee is given discretion in the performance of duties is not solely determinative. If the discretion as to duties is merely as to the manner, time or choice of persons from a class, and the trustee may under no circumstances keep the property for himself, it will be presumed that the precatory words were intended as words of binding obligation. (1 Bogert, Trusts and Trustees, § 48, p. 347.) The language of the testatrix does not indicate that the trustee is to comply with the testatrix' wish only if the trustee desires to do so. (2 Restatement, Trusts [2d ed.], § 351, *Comment* [*c*].)

The cases generally recognize that the term personal property in disposing of assets in a decedent's estate found within a building or house do not include securities (*Matter of Reynolds,* 124 N. Y. 388, *supra*), or stock (*Matter of McCarriagher,* 6 A D 2d 855 where this court reached the same conclusion as it does in the instant case), or money represented by a passbook (*Matter of Delaney,* 133 App. Div. 409, affd. without opinion 196 N. Y. 530), or an instrument purporting to constitute the forgiveness of a debt (*Central Union Trust Co.* v. *Flint,* 198 App. Div. 703). The case of *Matter of Stever* (273 App. Div. 344, 345) is not contra because there the testatrix bequeathed to a legatee " what is in the house that I dont otherwise dispose of ". The Surrogate relied on *Matter of Thompson* (217 N. Y. 111) but as pointed out by Presiding Justice Williams on the prior appeal (7 A D 2d 476, 479), that case involved the contents of a safe-deposit box and determined only that testatrix had not intended to bequeath those things not in the box at the time of death. The rule applicable to the contents of a safe-deposit box is dissimilar to that applicable to the contents of a house or building. In the absence of any indication of a contrary intent, the gift is limited to those things ordinarily identified with a building or home. (7 Warren's Heaton, Surrogates' Courts, § 68, pars, 9, 10, pp. 434-437.)

The wisdom of the rule of *ejusdem generis* seems particularly apt in the instant case. The testatrix' intention of setting up a charitable trust should be effectuated. The testatrix must be presumed to have known the assets of her estate and that any reference to a charitable trust was superfluous and meaningless if it were her intention that her entire estate go to the respondent. If a will recites apparently inconsistent provisions, serious consideration must be given to construing the instrument so as

to reconcile the inconsistency and give effect to all provisions. (57 Am. Jur., Wills, §§ 1128, 1129.)

The Surrogate's determination that the bonds set forth in the decree are the property of the respondent must be reversed and the will construed so as to vest the right and title to said bonds, pursuant to the terms of the residuary clause, in the foundation to be established and known as the " MARGARET FALVEY MEMORIAL FUND ". The motion of the Attorney-General for a compulsory accounting should be in all respects granted.

The decree should be reversed and the matter remitted to the Surrogate's Court of Onondaga County to enter a decree in accordance with this opinion.

BASTOW, J. P., HALPERN, McCLUSKY and HENRY, JJ., concur.

Decree unanimously reversed, on the law and facts, without costs of this appeal to either party and matter remitted to the Surrogate's Court to enter a decree in accordance with the opinion.