MARY E. TURNER *v.* ESTATE OF W. E. (BUCK) FLETCHER

5-5965                           483 S.W. 2d 176

Opinion delivered June 26, 1972

[Rehearing denied August 28, 1972.]

*Frank J. Wills,* for appellant.

*John B. Moore Jr.,* for appellee.

GEORGE ROSE SMITH Justice. This petition to the probate court for a construction of the will of W.E. (Buck) Fletcher presents in typical form a problem that has given rise to much litigation; that is, the proper interpretation of a testamentary gift of a house together with the personal property contained in it. This appeal is from a judgment holding that the language of the testator's will did not have the effect of bequeathing to the appellant certain in-

tangible personal property that was found in the testator's home.

The testator, single and without descendants, died in June, 1971. At his death Fletcher, a farmer, owned about 1,400 acres of farm land, inventoried at a value of $130,000, and intangible personal property valued at $287,-000. In language to be quoted in a moment Fletcher left to the appellant his homeplace, comprising 120 acres, together with the personal property contained in it.

The intangible personal property now in controversy was found in the testator's home. The record does not show just where the property was kept in the house, though there is a statement in the record that it had been in the home for a number of years. The property in dispute, valued at about $10,000, consisted of $300 worth of American Express Company traveler's checks, 55 1/2 shares of bank stock, a few shares of stock of nominal value in three private corporations, a $500 insurance trust certificate, and about 3,500 shares of stock in agricultural co-operative associations.

The testator's will contained a number of specific cash bequests to relatives, friends, and charitable institutions, and a residuary gift to a privately supported educational institution in Phillips county. The present controversy turns upon the construction of this provision in favor of the appellant:

I hereby give and bequeath to Mary Elizabeth Turner, a resident of Pulaski County, Arkansas, a friend of mine for many years and who has on many occasions extended many kindnesses and much comfort and help to me if she be living at the time of my death, for her lifetime, my home place where I now reside in Lonoke County, Arkansas, being my residence and the land on which it is situated and all other lands which I own contiguous thereto and lying south of U.S. Highway No. 70, and containing 120 acres, more or less. I also give to her, absolutely, all furnishings, fixtures, appliances, silverware, utensils, jewelry, sporting goods, personal effects, and every other kind of

personal property of any kind or nature that may be contained in my said home at the time of my death, together with my personal automobile. . . The Devisee may immediately enter upon and in my home upon my death to take charge of and preserve the property. She shall, however, cooperate fully with the Executor and Trustee hereinafter named in the furnishing of any records or information that may be contained in my said home and which pertains to property owned by me and not covered by the bequest in this paragraph. She shall have the right to occupy said home and farm the said lands, or shall have the right to rent the same on such basis as she may determine, and to otherwise fully enjoy the possession and income during her lifetime from said real estate.

The parties rely primarily upon two of our earlier cases. The appellee stresses our holding in *McLane* v. *Chancey,* 211 Ark. 280, 200 S.W. 2d 782 (1947), where the will devised "my home place, together with all the personal property therein." We held that the term "personal property, in its usual and common meaning, carried only the usual and ordinary household effects," and did not include an insurance policy and postal savings certificates, which were choses in action.

The appellant in turn stresses our holding in *Mc-Collum* v. *Price,* 213 Ark. 609, 211 S.W. 2d 895 (1948), where the bequest, not tied to a devise of a house, included "all of my household and all other personal possessions, of whatsoever kind and wherever located." We mentioned the rule of *ejusdem generis,* by which a general description of property, when coupled with a specific enumeration, is presumed to refer only to things of the same kind as those enumerated. We concluded, however, that the reference to "all other personal possessions, of whatsoever kind and wherever situated," was not limited to household possessions and included savings accounts in two banks.

Although we quite appreciate the forceful and persuasive arguments presented by each side in the case at bar, we are decidedly of the opinion that the language of the bequest must be construed to include the personal

property in controversy. We are impressed at the outset by the unusually sweeping and comprehensive language selected by the testator: ". . . all furnishings, fixtures, appliances, silverware, utensils, jewelry, sporting goods, personal effects, and every other kind of personal property of any kind or nature that may be contained in my said home at the time of my death." It will be noted that the testator, after having first specifically enumerated the various kinds of tangible personal property that would normally be found in a home, then added the inclusive phrase, "personal effects." Yet he did not stop there. He went on to refer to *every other kind of personal property of any kind or nature* that might be contained in the home at the time of his death. Unless the language just emphasized is construed to refer to the intangible property now in controversy, we fail to see that it accomplished anything at all. Needless to say, we must if possible give meaning and effect to all the words and phrases chosen by the testator.

There are other aspects of the will that point to the same conclusion. The specific reference to jewelry and sporting goods shows that the testator had in mind something more than ordinary household effects, which distinguishes this will from that construed in the *McLane* case, *supra*. Also, there was an understandable reason for Fletcher to leave to the appellant the shares of stock in the agricultural co-operatives, which would presumably be needed in the operation of the 120-acre farm that was devised to her for life. Finally, the reference to records and information pertaining to other property owned by the testator, but not covered by the bequest to Miss Turner, suggests rather clearly that Fletcher had in mind all the contents of the house, and not merely the tangible personal property, when he chose the language of the will. Upon the record as a whole we are convinced that Mr. Fletcher intended for the appellant to have the property now in dispute. It is our duty to give effect to that intention.

Reversed.