¡8. Samuel Di Falco, S.
This is a construction proceeding. The will of a famous painter, dated September 13, 1968, provides : ‘ ‘ third I give, devise and bequeath to my wife, mart alioe, the real estate owned by me at 118 East 95th Street, New York, together with all of the contents thereof.”
The will also gives a $250,000 legacy to the wife, five paintings to the Tate .Gallery, and the residue to the Mark Rothko Foundation. The decedent’s estate, consisting for the most part of his paintings, has an approximate value of $5,000,000. The real estate at 118 East 95th Street was the abode of the decedent, his wife and his children. The first three floors contained a living room, dining room, kitchen, bedrooms, bathrooms and *170 furnace room. The fourth floor consisted of a maid’s room, a bathroom and a large room used for many purposes and referred to in this ease as a “ studio”. On the fourth floor the family stored furniture, the paintings of the decedent and others, and miscellaneous items. There the decedent’s daughter painted and refinished furniture and the wife did some art work. There was testimony that the decedent may have worked in the fourth floor studio. At any rate, the decedent deducted the use of this part-time studio as an expense on his income tax return. The record establishes that he did most of his work at a studio on Bast 69th .Street, and the decedent’s income tax return indicated the East 69th Street studio as his business location. Some 40-odd paintings of the decedent are the subject of the contest over the construction of his will. About 12 (including works of art by other artists) were displayed on the walls of the first three floors of the home for decorative purposes. 'Some of the paintings that were found on the walls were at one time stored on the fourth floor. The remaining paintings were stored in the “ studio” on the fourth floor. The issue to be decided is whether the bequest of “ real estate and all the contents thereof” includes the paintings created by the testator and others and located within the house on East 95th Street.
The Foundation takes the position that none of the paintings formed part of the legacy. The fiduciaries Reis and Stamos are also directors of the Foundation which takes the residuary. Reis is an officer and a director of Marlborough Gallery with whom a contract was made by the executors relating to all the paintings by the decedent and owned by him at death. (Matter of Rothko [Midonick, S.], 71 Misc 2d 320, affd. 40 A D 2d 965.) In this .stance the Foundation is joined by these two executors. A third executor argues that those paintings which were used for decorative purposes on the first three floors pass under article third as part of the legacy of the real estate and contents, but that the paintings which were in the fourth floor “studio ” pass as part of the residuary estate. The executor under the wife’s will, she having survived the decedent and later died, and the testator’s two children (who benefit through the mother’s will) urge that all the paintings in the house are the subject of gift under article third of the ¡will.
There has been litigation in many jurisdictions arising from testamentary gifts of a house and “its contents ”. The court in search for the intent of the testator must consider all the background facts and the surrounding circumstances at the time he executed the will; then reading the will in its entirety, must *171 endeavor to take from the words the meaning which the testator tried to put into them.
It has been .said often that the only basic rule in construction proceedings is the ascertainment of the intent of the testator. (Matter of Fabbri, 2 N Y 2d 236; Matter of Gautier, 3 N Y 2d 502; Matter of Larkin, 9 N Y 2d 88.) The East 95th Street real estate as a matter of fact was held as tenants by the entirety so it really does not pass under the will. The language of this will is not strictly that of a lawyer. It was drafted by one of the executors, Reis, an accountant. The words 1 ‘ all the contents thereof ” have particular significance. My predecessor, Surrogate Foley, once said in Matter of Greenwald (186 Misc. 654, 657 [Surrogate’s Ct., N. Y. County, 1945] : “ The word 1 all ’ means exactly what it imports. It is defined * * * as * the whole number ’. A more comprehensive word cannot be found in the English language * * * Standing by itself the word means all and nothing less than all.”
Significant, too, is the use of the words “ real estate” in referring to the 95th Street property. The testator does not bequeath his house or his residence. He seems at this point to have been differentiating between real property and personal property and in disposing of his personal property he was completely aware of what was in the house. Cases involving contents of .a residence are Matter of Reynolds (124 N. Y. 388) where “contents” were not held to include securities found within the building; Matter of McCarriagher (6 A D 2d 855) where stock was held not to be included among contents; Matter of Delaney (133 App. Div. 409) where money represented by a passbook was not included, Central Union Trust Co. v. Flint (198 App. Div. 703) where an instrument purporting to forgive a debt was not so included.
Matter of Thompson (217 N. Y. 111) involved the contents of a safe-deposit box. The ruling was that the testatrix had not intended to bequeath those things not in the box at the time of her death. 'Generally speaking, in the absence of any expression of a contrary intent, the gift is limited to those things ordinarily identified with a building or a home. (7A Warren’s Heaton, Surrogates’ Cts., § 68, pars. 9 and 10.)
The instant case is different. The rule of ejusdem generis does not apply. There are no words limiting the meaning of “all of the contents” in the disposition under construction. The word is “contents” it is not “household effects” or “ furniture ”. A general rule is subject to the master rule that the intention of the testator must always govern. This, then, *172 is not a case where the testator bequeathed certain real estate “with .all the lands, buildings and appurtenances there unto belonging, or in any wise appertaining, and including all the furniture and personal property in and upon the same, or in any manner connected therewith ” (Matter of Reynolds, 124 N. Y. 388, 390). In that case the Court of Appeals said that the testator must have intended the general words to be limited to things ejusdem generis particularly in view of the fact that a contrary intention would have substantially resulted in a disappointment of the residuary disposition.
Here the residuary is more than substantial without these paintings comprising only 5% of this artist’s work.
The court is not concerned here with money or choses in action. The subject matter of this proceeding consists of paintings customarily kept in this house. It is significant that there is no proof that a “ rothko ” in the house was ever sold.
The proof at the hearing of circumstances surrounding this testator at the time of his death, reveals that in a prior will this decedent bequeathed 48 of his paintings to his family. In this will his testamentary plan was changed radically. This , prior will may be considered ¡by the court. (Dwight v. Fancher, 217 App. Div. 377, affd. 245 N. Y. 71, rearg. den. 245 N. Y. 566; Matter of Miner, 146 N. Y. 121.)
Conduct on the part of the decedent shortly after the will was made in respect of an inventory of his works casts some light on his testamentary intent. Proof of1 these acts subsequent to execution are admissible (Bigelow v. Percival, 162 App. Div. 831; Matter of Sargent, 215 App. Div. 639; 7 Warren’s Heaton, Surrogates’ Cts., § 20, par. 2 [b]).
It was established at the hearing that at the suggestion ,of one of his executors, Levine, the decedent undertook an inventory of all of his works. One of his close associates, who has no apparent interest in this matter, Dan Rice, testified that at the decedent’s direction he inventoried and catalogued works of art located at the East '69th Street studio and at warehouses. The decedent never directed that any of his works at East 95th Street be included in this inventory. After it was completed at his direction, paintings were sent to the gallery or the East 69th Street studio. The decedent never directed paintings to be sent to East 95th Street. This is significant, for it shows that the decedent in his mind had different ideas about his paintings which were for commercial purposes and subject to sale to the public and those which he kept in his home, It is urged that he just never got around to completing the inventory. The fact *173 is that decedent lived for about a year after the last item was inventoried, and the inventory included every painting except those in the house.
The law generally favors dispositions to the decedent’s immediate family rather than to strangers. There was some proof that the decedent and his wife were estranged at the time of the making the will, but the will does bequeath a brownstone of considerable value, $250,000 in cash and all the contents of the house to her. This hardly bespeaks intent to cut off his wife. There are some 840 paintings in this $5,000,000 estate. Only 40-odd works are the subject of this particular proceeding. The testator made no gift by will to his children, from whom there was no estrangement. He obviously knew that his wife would adequately provide and care for them. The paintings have not only commercial value to them, but also sentimental value. It is my ruling that the language of this will, in the light of the evidence at the hearing establishes the intent of Mark Rothko to include the 41 paintings in the house on East 95th Street in his bequest to his wife of “ all the contents thereof ”.