**In re the ESTATE OF Isabelle SHOPTAUGH, Deceased, Adolph M. Egloff and Martha Byrne Brokaw, Co-Executors (Petition to Construe Will of Decedent).**

**No. 1–185A24.**

Court of Appeals of Indiana, First District.

Sept. 16, 1985.

Rehearing Denied Oct. 29, 1985.

Jerry D. Stilwell, Princeton, for appellant.

Danny E. Glass, Fine, Hatfield, Sparrenberger & Fine, Evansville, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Martha Byrne Brokaw appeals a judgment of the Gibson Circuit Court construing the will of Isabelle Shoptaugh, deceased, declaring that certain corporate stocks found in a desk in decedent's residence were not included in a devise of the house and contents. We affirm.

## FACTS

Isabelle Shoptaugh died on May 22, 1983, and her last will and testament dated July 5, 1978, was probated on July 1, 1983. Shoptaugh's estate was valued at in excess of $1,600,000. Item III of her will, which is the one subject to controversy, provided as follows: "I give, devise and bequeath all real estate, together with all contents situate in, on and about the improvements on the real estate so owned by me at the date of my demise unto my niece, Martha Byrne Brokaw, of Princeton, Indiana." Shoptaugh's will made several specific bequests for charitable purposes, bequeathed 180 shares of bank stock to a nephew, and left the residue to twenty-seven nieces, nephews, great-nieces and great-nephews, including Brokaw, in equal shares.

When the assets of the estate were inventoried, six stock certificates were found in a desk drawer in the textatrix' home. These certificates represented corporate stocks valued at $121,000. Evidence admitted without objection at the hearing on the petition to construe the will revealed that all six certificates bore a date subsequent to the date of Shoptaugh's will, and five of them were dated later than her last visit to her safety deposit box. There also was testimony that Shoptaugh had responded negatively when asked if she had any other things she wished to place in her lock box.

Brokaw claims she is entitled to the stocks represented by these six certificates as "contents" of the house devised to her. If her position is correct, the share of each residuary legatee will be reduced by approximately $4500.

## ISSUE

The sole issue for our determination is whether the devise of Shoptaugh's house and contents included the stocks represented by the six stock certificates found in a desk drawer in the house. Or, stated differently, are the stock certificates within the definition of the term "contents" as used in the will?

## DISCUSSION AND DECISION

[1–4] In construing the will, it is our duty to determine and give effect to the intent of the testatrix. In so doing, we seek to determine that intent from the four corners of the instrument. *Estate of Ensminger v. Indiana National Bank* (1969), 144 Ind.App. 338, 246 N.E.2d 217, *trans. denied.* When that intent is clearly expressed, such intent must be given effect in the construction of the will. On the other hand, where the intent is not clearly expressed, or is couched in ambiguous terms, we will look to established rules of construction in ascertaining the intentions of the testatrix. *Estate of Ensminger,* 144 Ind.App. at 347–48, 246 N.E.2d at 223; *Apple v. Methodist Hospital* (1965), 138 Ind. App. 420, 206 N.E.2d 625, *trans. denied.* It is further the rule that words in a will are to be understood to have been used by the testatrix in their common and ordinary sense and meaning. *Estate of Ensminger,* 144 Ind.App. at 348, 246 N.E.2d at 223.

Our task in this case is to determine the meaning of the word "contents" in a devise of a house and its contents. Although this question has been the subject of much litigation, *Re Falvey's Will* (1962), 15 App. Div.2d 415, 224 N.Y.S.2d 899, 5 A.L.R.3d 458, it is one of first impression in Indiana.[1] Therefore, we must look to other jurisdictions for guidance.

First, because the provision in question does not list any specific items of property before using the word "contents", the doctrine of *ejusdem generis*[2] has no application. *Old Colony Trust Co. v. Hale* (1939), 302 Mass. 68, 18 N.E.2d 432. *See also Estate of Ensminger,* 144 Ind.App. at 346, 246 N.E.2d at 222, (where term "personal effects" placed at beginning of list of items of personal property rather than at end, doctrine of *ejusdem generdis* did not apply). Unaided by *ejusdem generis,* we must determine the meaning of the term "contents" in the context used in Shoptaugh's will from a consideration of other rules.

It is the general rule that, unless a contrary intention is clearly expressed in the will, a devise of a house and its contents does not include choses in action such as stock certificates, bank accounts, checks, insurance policies, deeds, mortgages, and securities which are found in the house. *McLane v. Chancey* (1947), 211 Ark. 280, 200 S.W.2d 782; *Linson v. Crapps* (1948), 204 Ga. 264, 49 S.E.2d 523; *Old Colony Trust Co. v. Hale* (1939), 302 Mass. 68, 18 N.E.2d 432; *In re Estate of Lamb* (1971), 445 Pa. 323, 285 A.2d 163; *Matter of Estate of Rudy* (1984), 329 Pa. Super. 458, 478 A.2d 879; *Re Falvey's Will* (1962), 15 App.Div.2d 415, 224 N.Y.S.2d 899, 5 A.L.R.3d 458; 80 Am.Jur.2d, *Wills,* § 1277 (1975); *Annot:* 5 A.L.R.3d 466, 550. Generally speaking, absent an expression of contrary intent, the gift of the "contents" of a home is limited to those things ordinarily identified with a home. *In re Estate of Rothko* (1974), 77 Misc.2d 168, 352 N.Y.S.2d 574; *In re Robbins Estate* (1976), 116 N.H. 248, 356 A.2d 679. As the Supreme Court of Georgia said in *Linson,* 49 S.E.2d at 524:

> "The word 'contents' is a word of comprehensive meaning, and the words 'con-

---

1. The closest Indiana case is *Estate of Ensminger v. Indiana National Bank* (1969), 144 Ind.App. 338, 246 N.E.2d 217, *trans. denied,* wherein it was held that a bequest of "personal effects" did not include any currency, cash, bank accounts, stocks, bonds, insurance proceeds or investment assets. The court relied on In *re Beisgen's Estate* (1956), 387 Pa. 425, 128 A.2d 52 and *Gaston v. Gaston* (1947), 320 Mass. 627, 70 N.E.2d 527, in reaching its decision. The court also was influenced by the fact that a contrary construction would thwart the testatrix' expressed intention on creating a trust because such would strip the proposed trust of assets thereby destroying the trust and rendering that portion of the will meaningless.

2. The rule of *ejusdem generis* is that where words of specific or limited signification are followed by general words of more comprehensive import, the general words are construed to embrace only those things of like kind and class with those designated by the specific words. *Short v. State* (1954), 234 Ind. 17, 122 N.E.2d 82; *Dowd v. Sullivan* (1940), 217 Ind. 196, 27 N.E.2d 82; *Bertrand v. Smeekens* (1973), 156 Ind.App. 572, 298 N.E.2d 25, *trans. denied.*

tents of said home' are sufficient to convey ... the household effects and such articles as are normally and usually kept for household and family use. The general rule is, however, that the words 'contents of a home' do not include deeds, mortgages, insurance policies, savings-bank books, and like items which might be classed as choses in action."

Other cases have reached the same result by considering other factors in addition to the general rule. *Wright v. Dzienis* (1962), 77 N.J.Super. 455, 187 A.2d 8 (devise of real estate "together with all my household chattels and contents therein" did not include cash in bedroom footlocker. Term "household chattels" does not in normal contemplation include cash in the house whether lying about or in some kind of receptacle. Court also applied rule of *ejusdem generis* ); *Quick v. Owens* (1941), 198 S.C. 29, 15 S.E.2d 837 (bequest of "all of the household furniture and fixtures and other personal property in the premises" did not include $8642.26 in cash in a trunk. *Ejusdem generis* applied.); *In re Marin's Estate* (1945), 69 Cal.App.2d 147, 158 P.2d 412 (bequest of "all the personal property, household furniture, furnishings, bric-a-brac ornaments and equipment of whatsoever nature or description which may be located in, upon, or about [my residence] at the time of my death", did not include war bonds found in the residence. *Ejusdem generis* applied.).

Cases which have reached a contrary result generally are distinguishable because of the particular language employed in the will. In *Turner v. Estate of Fletcher* (1972), 252 Ark. 917, 483 S.W.2d 176, a devise of a life estate in a farm residence and realty and "all furnishings, fixtures, appliances, silverware, utensils, jewelry, sporting goods, personal effects, and every other kind of personal property of any kind or nature that may be contained in my said home" was held to include traveler's checks, bank stock, corporate stock, insurance trust certificate, and stock in an agricultural cooperative which were found in the residence. The court said the language "every other kind of personal property of any kind or nature" covered the intangibles. Similarly, the court in *Winkler v. Woodruff* (1935), 21 Del.Ch. 147, 182 A. 409, held that a bequest of "all the furniture, household furnishings and *personal property of any kind whatsoever* " in the testator's residence embraced cash, shares of stock, jewelry, and wearing apparel found in the residence. The court alluded to testimony showing the stock was in the home before and after the will was made,[3] and also said that the language "personal property of any kind whatsoever" was all inclusive. The court rejected the rule of *ejusdem generis* as being at odds with the testator's expressed intent. Also, a bequest of "all my personal property located in my home or on my property" was held, in *Jacoway v. Brittain* (1978), Ala., 360 So.2d 306, to include $2500 in cash and certificates of deposit in a bank where the passbook and safety deposit box key were on the testator's property and the testator had told his attorney he wanted his money to go to the beneficiary. The court, however, said the words "all of my personal property", standing alone, would include the money on hand and on deposit and the choses in action.

■ We see nothing in the language of the will here which indicates an intention which is contrary to the general rule. Neither do we find present any of the factors which have led courts to reach a result contrary to the general rule. Consequently, it is our opinion that the general rule applies in this case, and we hold that the corporate stocks represented by the six stock certificates found in the desk in the testatrix' house did not pass to Brokaw under the devises of testatrix' real estate and contents in Item III of Shoptaugh's

**3.** Contrast the evidence here that none of the stocks were present in the home when the will was made, but, in fact, all of those in question,

will.[4] We further hold that said stocks are part of Shoptaugh's residuary estate.

Judgment affirmed.

NEAL and ROBERTSON, JJ., concur.

were acquired subsequent to the making of the will.

**4.** Because we have been called upon to determine the meaning of the word "contents" in the context of the devise of the real estate and contents in this case, we impress upon the reader the admonition of the New York court in *Re Falvey's Will:*

"The volume of litigation in all jurisdictions arising from the construction of wills which bequeath a house and its contents should make draftsmen particularly conscious of the necessity of care in expressing the intention of the testator in clear language. Language, like all other symbols, will always be imperfect in representing the concepts of the human mind but we submit that statements of a testator's intent should be expressed in simple and direct language."

224 N.Y.S.2d at 902, 5 A.L.R.3d at 461.