## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CA-00003-SCT

*IN THE MATTER OF THE LAST WILL AND TESTAMENT AND ESTATE OF LUCY ANNE LAWSON, DECEASED: NELL GRAVLEE LANGE*

*v.*

*MARTHA MOORE LAMBERT AND BEVERLY MOORE BRANTLEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/1999 |
| TRIAL JUDGE: | HON. JOHN C. ROSS, JR. |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | WALKER W. JONES, III |
| | SHERYL BEY |
| ATTORNEY FOR APPELLEES: | JOSEPH N. STUDDARD |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED - 08/23/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/13/2001 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Lucy Anne Lawson ("Lawson") died on or about January 19, 1997, leaving a holographic will dated July 13, 1996. The will bequeathed Lawson's residence and its "contents" with no residuary clause. The will was admitted to probate by order of the Chancery Court of Monroe County dated February 20, 1997. The Chancellor rendered his judgment on October 26, 1999, from which this appeal is taken.

## FACTS

¶2. In the will, Lawson bequeathed her residence and its "contents" to Martha Moore Lambert and Beverly Moore Brantley ("the Moore sisters"). Specifically, the will stated:

> I hereby give and devise equally unto Martha Moore Lambert and Beverly Moore Brantley my homestead residence and contents, also their childhood home, located at 4117 Navajo Road, Jackson, Mississippi. They at their discretion may distribute Lawson family items to Lawson heirs James B. and John W. Lange.

¶3. Nell Lange ("Lange"), an heir at law of Lawson, argued before the Chancellor that valuable stock certificates and bonds which were found in a lockbox and file cabinet in the house should not be considered "contents" of the house for purposes of the construction of the will. Since Lawson's will contained no

residuary clause, Lange argued that the stock certificates and bonds should pass intestate to her.

¶4. On October 26, 1999, the Chancellor issued an opinion and judgment finding that the "contents" of Lawson's home did in fact include the stock certificates and bonds. Feeling aggrieved, Lange appealed to this Court. The Moore sisters cross-appealed, arguing that the Chancellor improperly disallowed parol testimony demonstrating Lawson's intent as to the apportionment of estate taxes.

¶5. On this first impression issue we find that the stock certificates and bonds are not "contents" of the house for purposes of the construction of the will. We, therefore, reverse and render on direct appeal and affirm on cross-appeal.

## DISCUSSION

### I. Household Contents

¶6. Lange argues that the Chancellor erred in finding that the stock certificates and bonds should be considered "contents" of Lawson's house within the meaning of her will.

¶7. This Court recognizes a presumption against intestacy, and this Court will construe wills to avoid intestacy where that may be reasonably done. *Tinnin v. First United Bank*, 502 So.2d 659, 663 (Miss. 1987). However, "the paramount and controlling consideration is to ascertain and give effect to the intention of the testator. . . Where the instrument is susceptible of more than one construction, it is the duty of the court to adopt that construction which is most consistent with the intention of the testator." *Deposit Guar. Nat'l Bank v. First Nat'l Bank*, 352 So. 2d 1324, 1326-27 (Miss. 1977). This Court has stated that "[t]he surest guide to testamentary intent is the wording employed by the maker of the will." *Tinnin*, 502 So. 2d at 663.

¶8. Whether a devise of a house and its contents includes items such as stock certificates and bonds is an issue of first impression for this Court. Thus, keeping in mind our above-stated tenets of testamentary construction, we must look outside our jurisdiction for guidance. Upon a review of the case law from other jurisdictions, it is clear that a devise of a house and its contents does not include stock certificates and bonds. One authority states:

> In the absence of contrary testorial intention as a general rule, a bequest of the contents of house will not include choses in action or money found therein at the testator's death. The same rule applies to a bequest of the contents of an apartment or room, or in a particular place or business such as a store or office or farm. On the other hand, in the absence of a contrary testorial intention, it is the general rule that a bequest of the contents of a receptacle, such as a trunk, desk, envelope, safe, or safe deposit, includes money and choses in action.

80 Am. Jur. 2d *Wills*, §1277, at 385 (1975) (footnotes omitted). It is a general rule that, unless a contrary intention is expressed in the will, a devise of a house and its contents does not include such things as stock certificates, bank accounts, checks, insurance policies, deeds, mortgages, and securities found in a home. *In re Estate of Shoptaugh*, 482 N.E.2d 1142, 1144 (Ind. Ct. App. 1985) (citing *McLane v. Chancey*, 200 S.W.2d 782 (Ark. 1947); *Linson v. Crapps*, 49 S.E.2d 523 (1948); *Old Colony Trust Co. v. Hale*, 18 N.E.2d 432 (Mass.1939); *In re Falvey's Will*, 224 N.Y. S.2d 899 (N.Y. App. Div. 1962), *aff'd* 186 N.E. 2d 563 (N.Y. 1962); *In re Estate of Lamb*, 285 A.2d 163 (Pa. Super. Ct. 1971); *In re Estate of Rudy*, 478 A.2d 879 (Pa. 1984)). The gift of the "contents" of a home is limited to those things

ordinarily identified with a home. ***Shoptaugh***, 482 N.E.2d at 1144 (collecting authorities). The term "contents" when referring to a household customarily and ordinarily encompasses articles of personal property typically used in and about the household and appropriate to the functioning and enjoyment of the household. ***Linson v. Crapps***, 49 S.E.2d at 524; ***Lauter v. Kays***, 753 S.W.2d 302, 305 (Ky. Ct. App. 1988).

¶9. In ***Rentz v. Lambuth College***, 1991 WL 164403 (Tenn. Ct. App. 1991), the testator left his residence and its contents to one beneficiary. As in the case at bar, he did not dispose of the stocks and bonds found in his home. ***Id.*** The recipient of the residence argued that he was entitled to receive the stocks and bonds as contents. ***Id.*** The Tennessee Court of Appeals determined that the "contents" of the house did not include the stocks and bonds found in it. ***Id.*** Similarly, in ***Lauter*** the court found that as a matter of law, securities found in a house were not "household contents" for the purpose of the will. 753 S.W. 2d at 305. The court noted that the testator's intent was apparent from the face of the will, and nothing in the will suggested that the phrase "household contents" was meant to include anything other than customary and ordinary articles of personal property typically used in the household. ***Id.***

¶10. In the case sub judice, the will does not express Lawson's intention at the time the will was executed that the Moore sisters were to receive Lawson's intangible personal property such as stock certificates and bonds. Lawson specifically bequeathed Beverly Moore Brantly $30,000 in cash. Further, Lawson left her residence and its "contents" to the Moore sisters equally. The will stated, "[t]hey, at their discretion may distribute Lawson family items to Lawson heirs James B. and John W. Lange."

¶11. Lawson was so specific in other areas of her will that it simply cannot be said that it was her intent to include stocks and bonds within the "contents" of the home. Lawson's intent is expressed through the specific words and bequests that she made in her will. She instructed her executor to pay all her debts, as well as her expenses for her last illness and her burial. She left only two bequests of her personal property, the household effects of her residence to both Moore sisters, equally, and a single cash bequest to only one Moore sister. Lawson expressed her intent that her personal property, both tangible and intangible, and not otherwise specifically disposed of, fall intestate to pay her debts and expenses. There is nothing in Lawson's will to suggest that the term "contents" was intended to include anything other than articles such as furniture, furnishings, linens, silverware, glassware, utensils, and other household supplies, equipment, and appliances. As the prevailing case law suggests, securities do not belong in this category simply because they fortuitously happen to be on the premises at the time of the decedent's death. We conclude that the Chancellor erred in finding the "contents" of Lawson's home to include the stock certificates and bonds. Therefore, the chancery court's ruling on this issue is reversed, and judgment rendered in favor of Lange.

## II. Apportionment of Estate Taxes

¶12. The Moore sisters argue on cross-appeal that the Chancellor erred in refusing to allow them to attempt to establish that the decedent did not intend for the estate taxes to be apportioned, as provided by statute. Lawson's will provided:

> I direct that my Executor(trix) pay all of my legal debts, including the expenses of my last illness and death and burial expenses.

The Mississippi Uniform Estate Tax Apportionment Act, Miss. Code Ann. §§ 27-10-1 to 27-10-25 (1999), requires that estate taxes be apportioned unless the decedent's will directs otherwise. Miss. Code

Ann. § 27-10-7 states:

> unless the will otherwise provides, the tax shall be apportioned among all persons interested in the estate. The apportionment shall be made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax shall be used for that purpose. If the decedent's will directs a method of apportionment of tax different from the method described in this chapter, the method described in the will controls.

¶13. The Chancellor found that the aforementioned language in Lawson's will directing her executor to pay her legal debts expressed no intent regarding the apportionment of estate taxes. We hold that this finding by the Chancellor was correct. Lawson's direction that her executor "pay all of my legal debts, including the expenses of my last illness and death and burial expenses" indicates no intent whatsoever regarding the apportionment of estate taxes.

### III. Parol Evidence

¶14. The Moore sisters argue on cross-appeal that they should have been permitted to introduce certain parol evidence in order to clarify alleged ambiguities in the will. The sisters argue that:

> Parol evidence should be introduced to show the facts available to the decedent at the time of the making of the will, i.e. that she was unaware of the Mississippi Estate Tax Apportionment Act, that she was unaware of the fact that a portion of her property would pass intestate, that she was aware that she was excluding an amount of cash and cash equivalents from her specific bequests that approximated her estimate of the amount of estate taxes owed on her estate and that she intentionally did not include said property within her specific bequests for the purposes of having funds available for payment of estate taxes due upon her estate.

We disagree. The estate taxes must be apportioned unless the language of the will itself directs otherwise. The Chancellor's conclusion in this regard is also supported by persuasive authority from other jurisdictions. *See, e.g.,* ***In re Estate of Benton,*** 215 N.W.2d 86 (Neb. 1974). We hold that the Chancellor was correct in concluding that the estate taxes should be apportioned. This point of error is without merit, and, accordingly, we affirm the chancellor's ruling on this issue.

### <u>CONCLUSION</u>

¶15. The judgment of the Monroe County Chancery Court is reversed as to the disposition of the stock certificates and bonds found in Lawson's home, and judgment here is rendered in favor of Lange. The judgment is affirmed as to apportionment of the estate taxes.

¶16. **ON DIRECT APPEAL: REVERSED AND RENDERED. ON CROSS-APPEAL: AFFIRMED.**

> **PITTMAN, C.J., BANKS, P.J., WALLER, COBB AND DIAZ, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. AND**

**MILLS, J.**

**EASLEY, JUSTICE, DISSENTING:**

¶17. In my view, the majority errs in concluding that the household contents under this limited set of facts did not include the securities located in the lockbox found within the testator's home. I would affirm the chancellor's finding that the stock certificates and bonds which were found in the Lawson home should be considered "contents" of her home within the meaning of her will. As to the contents of the house, Lawson's intent is shown in paragraph III of her will:

> I hereby give and devise equally unto Martha Moore Lambert and Beverly Moore Brantley my homestead residence and contents, also their childhood home, located at 4117 Navajo Road, Jackson, Mississippi. They at their discretion may distribute Lawson family items to Lawson heirs James B. and John W. Lange.

¶18. Lawson was an educated woman who surely knew the contents of her home, including the stock certificates and bonds in a lockbox and file cabinet in her home. The handwritten will, consisting of ten pages, reflects her wishes and the thought she put into writing her will. This being a handwritten will by the testatrix without legal representation makes this a unique case. The chancellor stated that he considered the thoroughness and exactness of the will which did not reference any personal property located in the home.

¶19. This Court stated in ***Deposit Guar. Nat'l Bank v. First Nat'l Bank***, 352 So.2d 1324, 1327 (Miss. 1977), that in interpreting the provisions of a will:

> [t]he paramount and controlling consideration is to ascertain and give effect to the intention of the testator. In arriving at this intention, the Court is required to consider the entire instrument, sometimes said "from the four corners of the instrument." Where the instrument is susceptible of more than one construction, it is the duty of the Court to adopt that construction which is most consistent with the intention of the testator.

This Court has stated that "[t]he surest guide to testamentary intent is the wording employed by the maker of the will. Indeed, we have authority to give effect to a testator's intent only where that intent has received some form of expression in the will." ***Tinnin v. First United Bank***, 502 So.2d 659, 663 (Miss. 1987).

¶20. Lange cited authority from other jurisdictions in support of her position in the present case. In ***Lauter v. Kays***, 753 S.W.2d 302 (Ky. Ct. App. 1988), a Kentucky appellate court found that securities found in a house were not "household contents" for purposes of the will.

¶21. A New Jersey appellate court similarly held that:

> [M]onies in bank accounts evidenced by bank deposit books, stocks, bonds and other evidence of indebtedness, personal jewelry, articles of personal adornment, and the like, do not pass under a bequest of "household chattels" simply because they happen fortuitously to be in the premises at the time of decedent's death.

***Wright v. Dzienis***, 187 A.2d 8, 9 (N.J. Super. Ct. App. Div. 1962).

¶22. The will in the present case did not contain a residuary clause. As such, in the event that the "contents"

of Lawson's home were held not to include the stock certificates and bonds, this property would pass intestate. The sisters correctly note that, in construing the provisions of a will, this Court recognizes a presumption against intestacy. *Tinnin*, 502 So.2d at 663; *Richardson v. Browning*, 192 So.2d 692, 694 (Miss. 1966). This Court will construe wills so as to avoid intestacy where that may reasonably be done. *Tinnin*, 502 So.2d at 663; *Cooper v. Simmons*, 237 Miss. 630, 636, 116 So.2d 215, 218 (1959); *Richmond v. Bass*, 202 Miss. 386, 392, 32 So.2d 136, 137 (1947).

¶23. In the cases cited by Lange, the courts were not faced with the presumption of intestacy. Indeed, in *Lauter*, the Kentucky appellate court specifically found that:

> Although in *Dickson v. Dickson*, 180 Ky. 423, 202 S.W. 891 (1918), the former Court of Appeals found that a husband's bequest of "all my household furnishings and effects" included the income from personal property consisting of cash, notes and corporate stocks, it did so in order to avoid intestacy. This result is consistent with those in other jurisdictions and illustrates an exception some courts have made to the general rule that a bequest of household contents does not ordinarily include choses in action such as promissory notes, bonds or securities which are not ordinarily considered to have a locality. In those instances where courts have construed similar bequests to include choses in action, they appear to have done so to serve other presumptions of will construction such as the one against intestacy. See Annot., 149 A.L.R. 968 (1944).

*Lauter*, 753 S.W.2d at 304.

¶24. In my opinion, the key in this case that makes it distinguishable is the intent of the testatrix. The will was handwritten by the testatrix without any legal counsel making this a unique situation. The testatrix did not provide a residuary clause in the will. The testatrix was aware of the contents of her home which included her lock box and file cabinet. The lockbox and file cabinet contained the stocks, certificates and bonds. To determine that the stocks, certificates and bonds were not passed as household goods in the hand written will would circumvent the intent of the testatrix thereby creating intestacy.

¶25. I believe that the presumption against intestacy dictates affirming the chancellor's ruling in the present case. Although it is true that courts have often been unwilling to interpret securities as "contents" of a house, some courts have been willing to do so in cases in which the presumption against intestacy is applicable. I conclude that the chancellor was correct in finding the "contents" of Lawson's home to include the stock certificates; and therefore, I would affirm trial court's judgment.

**McRAE, P.J., AND MILLS, J., JOIN THIS OPINION**.