In re Marcia Nell HOLT.

In re Marvin Joe HOLT, Debtors.

Bankruptcy Nos. HA 86–183F,
HA 86–197F.

United States Bankruptcy Court,
W.D. Arkansas,
Harrison Division.

March 17, 1988.

Jacoway Law Firm, Ltd. by Jill Jacoway, Fayetteville, Ark., for debtors, Marcia Nell Holt and Marvin Joe Holt.

Rose Law Firm, P.A. by Charles W. Baker, and Michael R. Johns, Little Rock, Ark., for Federal Sav. and Loan Ins. Corp.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

Before the Court are the objections to exemptions filed by the Federal Savings and Loan Insurance Corporation (FSLIC) in the above cases. FSLIC has objected to the claims of exemption of certain assets by the separate debtors, Marcia Nell Holt and Marvin Joe Holt. Because the objections involve a determination of similar issues, the Court has consolidated the cases for purposes of hearing and decision. At

the time the objections were set for hearing and the parties agreed to submit written stipulations of fact and to provide the Court with legal briefs regarding the following issues: (1) whether Marcia Nell Holt may claim insurance policy proceeds payable to her as beneficiary and the cash value of life insurance policies on her life as exempt pursuant to A.C.A. § 16–66–218(b)(7) (Supp.1987) and A.C.A. § 16–66–209 (1987); and (2) whether Marvin Joe Holt may claim the cash value of life insurance policies on his life as exempt pursuant to A.C.A. § 16–66–218(b)(7) (Supp.1987) and A.C.A. § 16–66–209 (1987).[1]

Stipulations and briefs were filed August 25, 1987. Based upon the stipulations of the parties and the legal briefs, the Court makes the following ruling.

### Jurisdiction

Because this matter involves a determination of whether the debtors are entitled to claim certain assets as exempt, this Court has jurisdiction over the matter pursuant to 28 U.S.C. § 157(b)(2)(B). This Court makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### Findings of Fact

The Court adopts the following stipulations of fact submitted by the debtors and FSLIC.

#### A. APPLICABLE STATUTES.

1. The parties agree that [Ark.Stat. Ann.] §§ 66–3228; 66–3231; 66–4410; and 66–4514 [now codified at A.C.A. §§ 23–79–131; 23–79–134; 23–71–112; and 23–72–114 (1987)]

provide no basis for claiming an exemption of these assets under Arkansas law. Accordingly the debtors are no longer claiming that these assets are exempt under such statutes. The only statutory basis now urged by the debtors is Ark. Stat.Ann. § 30–208 [now codified at A.C.A. § 16–66–209].

2. The Arkansas State Highway Department Retirement Plan of Marcia Nell Holt is not exempt. Ms. Holt has agreed to withdraw her exemption claim with respect to her interest in such retirement plan.

#### B. THE PARTIES

3. Marcia Nell Holt is the debtor in HA 86–183F which was filed December 5, 1986. Marcia Nell Holt is the mother of Marvin Joe Holt.

4. Marvin Joe Holt is the debtor in HA 86–197F filed December 19, 1986. Marvin Joe Holt is the son of Marcia Nell Holt.

5. FSLIC is a creditor of Marcia Nell Holt and Marvin Joe Holt on a note signed by both debtors and Rebern Joe Holt, husband to Marcia Nell Holt and father of Marvin Joe Holt. The note was signed by others, not a party [sic] to this matter.

6. FSLIC has objected to exemptions claimed by both debtors, Marcia Holt and Marvin Holt.

7. The bankruptcy cases of Marvin Holt and Marcia Holt were consolidated because the parties are related, but both jointly liable on the same note to FSLIC, the facts in the cases are substantially the same

---

1. Since the objection to exemption was filed, the 1987 revisions of the Arkansas Statutes became effective. Therefore, the following Arkansas statutory references will be made to the new Arkansas Code Annotated (1987), rather than the previous Arkansas Statutes Annotated:

  Ark.Stat.Ann. § 30–207 (1979), *now* A.C.A. § 16–66–208 (1987)
  Ark.Stat.Ann. § 30–208 (1979), *now* A.C.A. § 16–66–209 (1987)
  Ark.Stat.Ann. § 36–211 (Supp.1985), *now* A.C. A. § 16–66–218 (Supp.1987)

  Ark.Stat.Ann. § 66–3228 (1980), *now* A.C.A. § 23–79–131 (1987)
  Ark.Stat.Ann. § 66–3231 (1980), *now* A.C.A. § 23–79–134 (1987)
  Ark.Stat.Ann. § 66–4410 (1980), *now* A.C.A. § 23–71–112 (1987)
  Ark.Stat.Ann. § 66–4514 (1980), *now* A.C.A. § 23–72–114 (1987)
  Ark.Stat.Ann. § 68–1302 (1979), *now* A.C.A. § 4–59–204 (1987).

and the same legal arguments apply.[2]

### C.  MARCIA NELL HOLT

8.  Marcia Nell Holt's bankruptcy petition lists as an asset the proceeds of insurance policies on her husband, Rebern Joe Holt, who died October 4, 1986. Upon Mr. Holt's death, Mrs. Holt was entitled to collect insurance policies on Mr. Holt's life as follows: Ohio National—$250,000 plus $2,052.52 interest; Ohio National—$20,000 plus $561.00 interest; Ohio National—$3,000.00 plus $760.86 interest; Farm Bureau—$11,629.75 (Mr. Holt had borrowed against a $25,000 policy and after the loan was repaid, the net proceeds payable to Mrs. Holt were $11,629.75); Arkansas Highway Department—$2,000.00. The total amount received by Mrs. Holt as the beneficiary of the insured, Rebern Joe Holt, was, therefore, $290,004.11. No proceeds on any policy were received by the debtor prior to the filing of her bankruptcy petition.

9.  The debtor, Marcia Nell Holt, claimed in her bankruptcy proceeding that the proceeds received upon the death of her husband plus accrued interest thereon were exempt pursuant to Ark.Stat.Ann. § 30–208 [now codified at A.C.A. § 16–66–209].

10.  In addition to the proceeds mentioned above, the debtor, Marcia Holt, also claimed as exempt the cash surrender value of two other policies issued by Ohio National Life Insurance policy.

11.  The first of the policies was purchased by Rebern J. Holt on February 2, 1982. The face value of the policy was $10,000.00 with a cash surrender value of $577.00. The insured on this policy was the debtor, Marcia Nell Holt, and her husband, Rebern J. Holt, was named as the beneficiary.

12.  The second policy in which the debtor claims the cash surrender value as exempt was purchased by the debtor on November 25, 1986. This policy has a face value of $116,000.00 and has an approximate cash surrender value of $10,000.00. The funds used to purchase the premium of $10,700.00 was from proceeds from the sale of certificates of deposit owned by Mrs. Holt. Marcia Nell Holt is the insured and the owner of this policy and her estate is the named beneficiary.

13.  Mrs. Holt, the debtor, purchased the $116,000.00 policy after she had decided to file her bankruptcy petition with the purpose of converting nonexempt property into property for which an exemption could be asserted.

### D.  MARVIN JOE HOLT.

14.  Marvin Joe Holt, son of Marcia Holt and Rebern Joe Holt, also claims as exempt the cash surrender value of two life insurance policies.

15.  The first of these policies was purchased from Ohio National Life Insurance Company by Marvin J. Holt on June 8, 1984. Initially the policy had a face value of $100,000.00. The debtor, Marvin Holt, is the insured, and his parents are the named beneficiaries.

16.  On December 8, 1986, Marvin J. Holt increased the death benefit of this policy to $200,000.00 by paying a $6,491.88 premium (using money from an annuity). The cash surrender value of the policy has increased to $6,000.00.

17.  Marvin Holt had determined that he was going to petition in bankruptcy at the time of the payment of the additional premium on this policy and the premiums he paid to increase the $100,000.00 policy to a

---

**2.** The Court notes that the cases were consolidated only for purposes of the Court's consideration of the objections to exemptions filed by FSLIC.

$200,000.00 was for the purpose of converting non-exempt property into assets for which an exemption could be claimed.

18. The second of these policies was purchased on December 19, 1973 from Banker's Life Insurance Company. The face value of the policy is $3,515.00 and the cash surrender value is $1,400.00. The insured is Marvin J. Holt and the beneficiary is Rebern J. Holt, father, Marcia N. Holt, mother, and contingent, John H. Holt, brother.

### Contentions of Parties

FSLIC, a creditor of the debtors, has objected to the debtors' exemption claims on the following grounds:

(1) The entire Arkansas opt-out exemption scheme, as codified in A.C.A. § 16–66–218 (Supp.1987), is unconstitutional. Therefore, the only exemptions available to the debtors are the exemptions provided under the Bankruptcy Code which will not provide an exemption of the entire amount of the proceeds of the insurance policies.

(2) A.C.A. § 16–66–209, which is referenced in A.C.A. § 16–66–218(b)(7), does not provide for an "absolute" exemption for the proceeds payable under insurance policies and the cash surrender value of insurance policies, but merely provides an exemption of funds from the Arkansas garnishment remedies, and for that reason the debtors can not claim the insurance policies as exempt. Alternatively, if § 16–66–209 is interpreted as creating an "absolute exemption" the statute should be found to be unconstitutional since the amounts exempted would exceed the amounts allowable under the Arkansas Constitution.

In response, the debtors have made the following contentions:

(3) All monies paid or payable to an insured under any life insurance policies are exempt without limitation under A.C.A. § 16–66–209.

(4) A.C.A. § 16–66–209 is the kind of exemption which a debtor is permitted to raise under 11 U.S.C. § 522. An exemption need not be explicitly called an "exemption" or be "absolute" in order to be available under § 522. Further, an exemption is not objectionable because it extends its protection to entities other than a debtor, and § 16–66–209 is indistinguishable from federal nonbankruptcy exemptions available to the debtors under § 522.

(1) A.C.A. § 16–66–209, which creates a bankruptcy exemption under A.C.A. § 16–66–218, is constitutional and is available to the debtor under 11 U.S.C. § 522. The Arkansas Supreme Court has held § 16–66–209 to be constitutional and this decision must be respected by the bankruptcy court. Further, the Arkansas legislature's intent was to make § 16–66–209 available to debtors as a bankruptcy exemption. Section 16–66–209 is not inconsistent with the congressional policies underlying 11 U.S.C. § 522.

(2) A.C.A. § 16–66–209 is still available to the debtors under 11 U.S.C. § 522 for bankruptcy purposes. Section 522 and the supremacy clause of the United States Constitution permit expansion of a debtor's exemptions beyond those permitted by the Arkansas Constitution. The question of whether state law requires statutory enactment or constitutional amendment is a determination to be made by the Arkansas legislature.

(5) The Bankruptcy Code permits a debtor to convert nonexempt property to exempt property on the eve of bankruptcy filing.

In its reply brief, FSLIC has argued:

(1) A.C.A. § 16–66–218 does not expand A.C.A. § 16–66–209.

(2) Substantively, A.C.A. § 16–66–209 is not an exemption, or an "absolute" exemption.

*Conclusions of Law*

### A.C.A. § 16–66–218 Does Not Violate the Uniformity Requirements of the Bankruptcy Clause of Article I, § 8, Clause 4 of the United States Constitution

■ The Bankruptcy Reform Act of 1978, as codified in 11 U.S.C. §§ 101–1330, not only established a federal bankruptcy exemption scheme but also established a method by which individual states could "opt-out" of the federal exemptions and provide bankruptcy exemptions for its citizens pursuant to its applicable state laws. *See* 11 U.S.C. § 522. 11 U.S.C. § 522(b) provides in pertinent part:

> Notwithstanding § 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
>
> (1) property that is specified under subsection (d) of this section, *unless the state law that is applicable to the debtor* under paragraph (2)(A) of this subsection specifically *does not so authorize....*

11 U.S.C. § 522(b) (emphasis supplied). In 1981, the Arkansas Legislature elected to "opt-out" of the federal exemption scheme. *See* A.C.A. §§ 16–66–217 and 16–66–218 (1987 and Supp.1987). A.C.A. § 16–66–217 provides:

> State bankruptcy exemptions exclusive. In accordance with the provisions of section 522(b) of the Bankruptcy Code of 1978 (11 U.S.C. 522(b)), residents of this State shall be prohibited from using the federal exemptions provided in section 522(d) of the Bankruptcy Code of 1978, the applicable exemptions to be those permitted by the Constitution and laws of the State of Arkansas.

A.C.A. § 16–66–217 (1987). A.C.A. § 16–66–218 enumerates the bankruptcy exemptions available to Arkansas debtors. A.C.A. § 16–66–218(a) provides exemptions which are available only to debtors in bankruptcy. A.C.A. § 16–66–218(b) states exemptions available to debtors in bankruptcy by referencing the Arkansas Constitution, Arkansas statutes and other exemptions. Section 16–66–218 states:

> (a) The following property shall be exempt from execution under bankruptcy proceedings pursuant to Public Law 95–598:
>
> (1) The unmarried debtor's aggregate interest, not exceeding eight hundred dollars ($800.00) in value, and the married debtor's aggregate interest, not exceeding Twelve Hundred and Fifty Dollars ($1,250.00) in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor;
>
> (2) The debtor's interest, not to exceed twelve hundred dollars $1,200.00) in (1) motor vehicle;
>
> (3) The debtor's aggregate interest in the debtor's or the debtor's spouse's wedding bands, including diamonds mounted thereon not exceeding one-half (½) carat in weight;
>
> (4) The debtor's aggregate interest, not to exceed seven hundred fifty dollars ($750) in value in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.
>
> (b) The exemptions granted in subsection (a) of this section shall be in addition to the present exemptions granted by Arkansas law as listed below:
>
> (1) The personal property of an unmarried person or head of family not exceeding two hundred dollars ($200) in value in addition to such person's wearing apparel—Arkansas Constitution: Article 9, § 1;
>
> (2) The personal property of a married person or head of a family not exceeding a value of five hundred dollars ($500.00) in addition to such person's wearing apparel—Arkansas Constitution; Article 9; § 2;
>
> (3) Rural homesteads not exceeding one hundred and sixty (160) acres of land with improvements thereon, up to

twenty-five hundred dollars ($2,500.00) in value but in no event less than eighty (80) acres without regard to value—Arkansas Constitution; Article 9; § 4;

(4) The urban homestead not exceeding one (1) acre of land with improvements thereon, but not to exceed twenty-five hundred dollars ($2,500.00) in value, but in no event to be less than one quarter (¼) of an acre of land without regard to value—Arkansas Constitution; Article 9, § 5;

(5) The rural or urban homestead of a widow or surviving dependent children including the rents and profits from such homestead—Arkansas Constitution; Article 9, § 6;

(6) Sixty (60) days wages, not exceeding the limits imposed by Sections 1 and 2 of Article 9 of the Arkansas Constitution, but in no instance less than twenty-five dollars ($25.00) per week—§ 16–66–208;

(7) Proceeds of life, health, accident and disability insurance—§ 16–66–209;

(8) State Police retirement benefits—§§ 24–6–202, 24–6–205, 24–6–223;

(9) Stipulated premium insurance benefits—§ 23–71–112;

(10) Mutual assessment insurance benefits—§ 23–72–114;

(11) Fraternal benefit society benefits—§ 23–71–119;

(12) Assets of delinquent insurer—§ 23–68–120;

(13) Rights to unemployment benefits and benefits received but not mingled with other funds except for debts incurred for necessities furnished during the time of unemployment—§§ 11–10–107—11–10–110;

(14) Worker's Compensation benefits—§ 11–9–110;

(15) Public Welfare Assistance grants—§ 20–76–430;

(16) All contributions made by a debtor to an individual retirement account, as that term is defined for federal income tax purposes and state income tax purposes for a period exceeding one (1) year prior to the filing of a petition in bankruptcy. However, the maximum amount of individual retirement account contributions that may be claimed under the subdivision shall not exceed twenty thousand dollars ($20,000) for an individual and twenty thousand dollars ($20,000) for a husband and wife combined;

(17) All other benefits exempt by law but not specifically enumerated herein.

A.C.A. § 16–66–218 (Supp.1987).

Specifically challenged by FSLIC's objection to the debtors' exemption claims is A.C.A. § 16–66–218(b)(7) which references A.C.A. § 16–66–209. A.C.A. § 16–66–209 provides:

Proceeds of life, health, accident and disability insurance exempt. All moneys paid or payable to any resident of this state as the insured or beneficiary designated under any insurance policy or policies providing for the payment of life, sick, accident and/or disability benefits shall be exempt from liability or seizure under judicial process of any court, and shall not be subjected to the payment of any debt by contract or otherwise by any writ, order, judgment, or decree of any court, provided, that the validity of any sale, assignment, mortgage, pledge or hypothecation of any policy of insurance or if any avails, proceeds or benefits thereof, now made, or hereafter made, shall in no way be affected by the provisions of this section.

A.C.A. § 16–66–209 (1987).

FSLIC has challenged A.C.A. § 16–66–218 in its entirety and subsection (b)(7) of § 16–66–218 on the grounds that the statute violates the uniformity requirements of the bankruptcy clause of the United States Constitution. U.S. Const. Art. I, § 8, cl. 4. FSLIC has asserted that A.C.A. § 16–66–218 is inconsistent with the "federal exemptions backdrop" and that § 16–66–218 creates certain exemptions which are available only to bankruptcy debtors and unavailable to non-bankruptcy debtors. The debtors have argued that § 16–66–218 does not violate the bankruptcy clause and should be found to be constitutional.

Article I, § 8, clause 4 of the United States Constitution provides that Congress shall have the power "[t]o establish ... uniform Laws on the subject of bankruptcies throughout the United States." Since 1800, Congress has enacted bankruptcy laws which have allowed debtors an opportunity to claim certain properties as exempt under federal or state laws.[3] In 1978, Congress enacted 11 U.S.C. § 522. Federal exemptions for bankruptcy debtors were established in § 522(d).[4] Alternatively,

**3.** The Bankruptcy Act of 1800 (Act of April 4, 1800, ch. 19, § 5, 2 Stat. 19, 23) provided federal exemptions for debtors which overrode state exemptions and included clothes for the debtor, the debtor's wife and children, bedding for the debtor and a stipend from the estate. An additional award of clothing, household goods and cash was made after discharge. The Bankruptcy Act of 1841 (Act of Aug. 19, 1841, ch. 9, § 3, 5 Stat. 440, 442–43) granted debtors federal exemptions for clothing and furnishings of the debtor up to $300. With the Bankruptcy Act of 1867, (Act of Mar. 2, 1867, ch. 176, 14 Stat. 517), state law exemptions were added along with federal exemptions. The Bankruptcy Act of 1898 (Act of 1898, ch. 541, § 6, 30 Stat. 544, 548), entirely eliminated federal bankruptcy exemptions and provided that the law of a debtor's home state constituted the exclusive exemptions which the debtor could claim in bankruptcy.

**4.** 11 U.S.C. § 522(d) provides:

(d) The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

(2) The debtor's interest, not to exceed $1,200 in value, in one motor vehicle.

(3) The debtor's interest, not to exceed $200 in value in any particular item of $4,000 in aggregate value in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(4) The debtor's aggregate interest, not to exceed $500 in value, in jewelry held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

(5) The debtor's aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided under paragraph (1) of this subsection.

(6) The debtor's aggregate interest, not to exceed $750 in value, in any implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

(7) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract.

(8) The debtor's aggregate interest, not to exceed in value $4,000 less any amount of property of the estate transferred in the manner specified in section 542(d) of this title, in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent.

(9) Professionally prescribed health aids for the debtor or a dependent of the debtor.

(10) The debtor's right to receive—

(A) a social security benefit, unemployment compensation, or a local public assistance benefit;

(B) a veterans' benefit;

(C) a disability, illness, or unemployment benefit;

(D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(E) a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;

(ii) such payment is on account of age or length of service; and

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 USC 401(a), 403(a), 403(b), 408 or 409).

(11) The debtor's right to receive, or property that is traceable to—

(A) An award under a crime victim's reparation law;

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor;

(D) a payment, not to exceed $7,500 on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an

Congress in § 522(b) granted states the power to opt-out of the federal exemption scheme in favor of state exemptions.[5]

Soon after § 522 was enacted, numerous states opted out of the federal exemptions and subsequently, challenges were made not only to the constitutionality of § 522(b), but also to the various state statutes. Although the circumstances differed in each case depending upon the particular statute challenged, the cases which have been decided are instructive in the present case.

The leading case involving a challenge under the uniformity requirements of the bankruptcy clause is *In re Sullivan*, 680 F.2d 1131 (7th Cir.1982), *cert. denied*, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). In *Sullivan*, two debtors challenged that § 522(b) was unconstitutional because it violated the uniformity requirements under the bankruptcy clause. The Illinois Legislature had opted out of the federal exemptions and had enacted statutes requiring debtors to elect state law exemptions which differed from the § 522(d) provisions. The bankruptcy court found no violations of the uniformity requirements under the bankruptcy clause. Upon direct appeal, the Seventh Circuit Court of Appeals affirmed. The Seventh Circuit held that the "uniformity" required under the bankruptcy clause is geographic uniformity and that the Illinois statutes met the geographic uniformity test and were constitutional. To reach this conclusion, the Court relied upon *Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), a case decided under the Bankruptcy Act of 1898, which the Seventh Circuit found to be applicable under the Bankruptcy Code. In *Moyses*, the United States Supreme Court had upheld a provision in the Bankruptcy Act of 1898 which allowed bankruptcy debtors to claim exemptions under their respective states' laws. The Supreme Court had found that geographic uniformity, not true uniformity, was required under the bankruptcy clause. Because all bankruptcy debtors in a geographic area were treated similarly, no constitutional violations were present.

In *Sullivan*, the Seventh Circuit contrasted the Illinois opt-out statute with the federal exemptions and found a marked discrepancy between the two exemption provisions, with the Illinois statutes being more restrictive than the federal provisions. 680 F.2d at 1133. The Court then found, relying upon *Moyses*, that even though § 522(b) allowed exemption levels to differ from state to state, the constitutional requirements of uniformity under the bankruptcy clause were met. *Id.* at 1134–35. The Court noted that if the test were "true uniformity," the Illinois statutes would be unconstitutional, but since only geographic uniformity was required, the Illinois statutes were constitutional. *Id.* at 1137–38.

Other courts have addressed challenges to the uniformity requirements of the bankruptcy clause. In *In re Parrish*, 19 B.R. 331 (Bankr.D.Colo.1982), a Colorado debtor challenged a Colorado "opt-out" statute on the grounds that the statute was unconsti-

individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

**5.** Section 522(b) represents a compromise between the House of Representatives and the Senate on the eve of the enactment of the 1978 Bankruptcy Act. The Senate had proposed allowing debtors to claim exemptions under applicable state laws. S.Rep. No. 989, 95th Cong., 2d Sess. 6 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5792. The House also had proposed an allowance of exemptions under state law, but had added a proposal which would have allowed a debtor to choose between state exemptions and federal exemptions. H.R. Rep. No. 595, 95th Cong., 1st Sess. 126–27 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6087–88. Ultimately, the compromise reached between the House and Senate proposals provided for reduced federal exemptions from the original House proposal and granted individual states the right to elect not to have the federal exemptions apply to their debtors or, in other words, to "opt-out" of the federal exemptions. *See* 124 Cong.Rec. S. 17406 (daily ed. Oct. 6, 1978) (remarks of Sen. Wallop); 124 Cong.Rec. S. 17404 (daily ed. Oct. 6, 1978) (remarks of Sen. Deconcini); *and* 124 Cong.Rec. H. 11095 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).

tutional under the bankruptcy clause because the Colorado statute did not provide for a "floating exemption" as allowed under 11 U.S.C. § 522(d)(1) and (5), the effect being that the debtor could not claim property as exempt under state law which could be claimed as exempt under federal law. The Colorado bankruptcy court summarily addressed the challenge and found the bankruptcy clause was a restriction on Congress' exercise of powers, not the various states' powers and, therefore, the Colorado statute could not violate the uniformity requirements of the bankruptcy clause. 19 B.R. at 333–34.

Three cases decided prior to *Sullivan* also had reached the same conclusion. *See In re Lausch,* 16 B.R. 162 (M.D.Fla.1981); *In re Vasko,* 6 B.R. 317 (Bankr.N.D. Ohio 1980); *and In re Bloom,* 5 B.R. 451 (N.D. Ohio 1980). In *In re Lausch,* 16 B.R. 162 (M.D.Fla.1981), a bankruptcy trustee contended that the Florida opt-out statutes were unconstitutional. The Florida district court, relying on *Moyses,* found that the Florida statutes met the test for geographic uniformity. The Court noted, "[T]he general operation of the law is uniform even though it may result in certain particulars differently in certain states." 16 B.R. at 163 (quoting *Hanover Nat'l Bank v. Moyses,* 186 U.S. at 190, 22 S.Ct. at 861).

In *In re Vasko,* 6 B.R. 317 (Bankr.N.D. Ohio 1980), an Ohio bankruptcy court found that the uniformity requirements of the bankruptcy clause were controlling only on Congress' exercise of power and noted that states maintained their sovereign power to pass laws, with some limitations. 6 B.R. at 320. *See Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Regarding the states' limitations, the Court stated:

> It was long ago settled that state laws to the extent that they conflict with the laws of Congress on the subject of bankruptcies are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by Congress. *See Sturges v. Crowninshield,* 4 Wheat. 122, 4 L.Ed. 529 (1819); *Ogden v. Saunders,* 12 Wheat. 213, 6 L.Ed. 606 (1827).

Another Ohio bankruptcy court in *In re Bloom,* 5 B.R. 451 (N.D. Ohio 1980), also found that Ohio exemption statutes enacted pursuant to the opt-out powers of § 522(b) did not conflict with the bankruptcy clause of the Constitution or with other provisions of the Bankruptcy Code. The Court cited the rationale for the exemption statutes to be for the "fresh start" purposes of bankruptcy. The court stated:

> This authority [given pursuant to 11 U.S.C. § 522(b)] vested the states with the right to specify the exemptions and to employ the necessary provisions to answer the needs of the persons domiciled therein. Though not as liberal as the Code's exemptions, the Ohio law is in conformity with the federal legislative intent to provide the mandated "fresh start" to debtors in bankruptcy.... If the Ohio exemptions appear unjust, recourse and remedy lie with the Ohio Legislature.

*In re Bloom,* 5 B.R. at 454.

Other courts have cited the "fresh start" purposes of bankruptcy as the rationale for allowing states to opt-out of federal exemptions in favor of state law exemptions. *See, e.g., In re Sullivan,* 680 F.2d 1131, 1135–36 (7th Cir.1982); *In re Keyworth,* 47 B.R. 966, 975–76 (D.Colo.1985); *In re Parrish,* 19 B.R. 331, 335 (Bankr.D.Colo.1982); *In re Vasko,* 6 B.R. 317, 322 (Bankr.N.D. Ohio 1980); *In re Bloom,* 5 B.R. 451, 453 (Bankr.N.D. Ohio 1980). In promoting the fresh start purposes of bankruptcy, it is clear that a state can provide for exemptions which are more restrictive or less restrictive than the federal exemptions. *See In re Golden,* 789 F.2d 698, 700 (9th Cir.1986); *Zimmerman v. Morgan,* 689 F.2d 471 (4th Cir.1982); *In re McManus,* 681 F.2d 353 (5th Cir.1982); *reh'g denied,* 689 F.2d 190 (5th Cir.1982); *In re Sullivan,* 680 F.2d 1131 (7th Cir.1982); *In re Keyworth,* 47 B.R. 966 (D.Colo.1985); *In re Lausch,* 16 B.R. 162 (M.D.Fla.1981); *In re Douglas,* 59 B.R. 836 (Bankr.D.Kan.1986); *In re Vasko,* 6 B.R. 317 (Bankr.N.D. Ohio 1980); *In re Bloom,* 5 B.R. 451 (Bankr. N.D. Ohio 1980).

In *In re McManus,* 681 F.2d 353 (5th Cir.1982), *reh'g denied,* 689 F.2d 190 (5th

Cir.1982), the Fifth Circuit Court of Appeals interpreted states's powers under § 522(b). The Fifth Circuit succintly stated:

> Section 522(b) expressly grants the states broad discretion in open-ended opportunity to determine what property may be exempt from the bankruptcy estate, as long as the state law does not conflict with property exempt under federal law other than the laundry list. Significantly, the section does not mandate that debtors be guaranteed a right to exempt particular types of property. The unambiguous language of section 522(b) implicitly indicates a state may exempt the same property included in the federal laundry list, more property than included in the federal laundry list, or less property than that included in the federal laundry list. The states also may prescribe their own requirements for exemptions, which may either circumscribe or enlarge the list of exempt property.

681 F.2d at 355–56 (footnote omitted).

In addressing FSLIC's challenge under the bankruptcy clause, it is clear that A.C. A. § 16–66–218 does not violate the uniformity requirements of Article I, § 8, clause 4 of the United States Constitution.[6] Congress, through § 522(b), expressly granted states the power to opt-out of the federal exemptions and provide for exemptions under state laws. Section § 522(b)'s opt-out provisions have been found to be a constitutional exercise of Congress' power under the bankruptcy clause. Although a state's opt-out powers may be limited to the extent that the powers do not actually conflict with the purposes and the intentions of the Bankruptcy Code, the Arkansas Legislature was granted the power by Congress to provide for exemptions which are more restrictive or less restrictive than the exemptions provided under § 522(d).

The Arkansas exemptions under A.C.A. § 16–66–218 differ from the exemptions provided under 11 U.S.C. § 522(d). Some exemptions are more restrictive and some exemptions are less restrictive than the federal provisions.[7] However, all bankruptcy debtors in Arkansas have the opportunity to elect the exemptions provided un-

---

**6.** The Court notes that 11 U.S.C. § 522(b) has withstood other constitutional challenges, especially under the supremacy clause, U.S. Const., Art. VI, cl. 2; the equal protection clause, U.S. Const., Amend. 14; and allegations that § 522(b) is an improper delegation of Congressional powers to the state. Section 522 has been upheld under these challenges, although certain state statutes have been ruled unconstitutional.

For cases finding certain statutes unconstitutional, *see e.g., In re Locarno,* 23 B.R. 622 (Bankr.D.Md.1982); *and In re Davis,* 16 B.R. 62 (Bankr.D.Md.1981). In *Locarno,* a Maryland Bankruptcy Court found a Maryland exemption statute which preferred one class of debtors, home owners, over another class of debtors, non-home owners, conflicted with Congress' policy of granting all debtors a "fresh start" and violated the supremacy clause because it unfairly discriminated between bankruptcy debtors. Further, the Court found that the Maryland Legislature had abused its powers within that particular exemption statute. 23 B.R. at 630–31. *Locarno* the minority view, however, but the Maryland Bankruptcy Court determined that the statute discriminated between certain bankruptcy debtors rather than between bankruptcy and non-bankruptcy debtors and was unconstitutional. *Davis,* a Maryland bankruptcy court found a Maryland statute which required a debtor to show attempts to renegotiate payment schedules unconstitutional under the supremacy

clause because it violated the spirit and intent of chapters 7 and 13 of the Bankruptcy Code. 16 B.R. at 63–64. This Court agrees with the holding in *Davis* that the Maryland statute interfered with the fresh start purposes of chapter 7 and the repayment requirements of chapter 13.

FSLIC, in its objection, framed its United States Constitutional challenges under the bankruptcy clause, U.S. Const. Art. I, § 8, cl. 4. Although some of its allegations regarding the inconsistency of the Arkansas exemption against the federal exemptions imply challenges under the supremacy clause, this Court will not expand FSLIC's constitutional allegations to include challenges under other than its challenge asserted under the bankruptcy clause.

**7.** For example, *compare* 11 U.S.C. § 522(d)(1) *with* A.C.A. § 16–66–218(a)(1). Under the Arkansas exemption statutes, an unmarried debtor may claim $800 and a married debtor may claim $1,250 in real property used as a rural or urban homestead or in a cooperative that owns property that the debtor or a dependent uses as a residence or in a burial plot of the debtor or a dependent of the debtor. Under the federal exemptions a debtor may claim a value of $7,500 in real or personal property for those same reasons. The Arkansas exemption statutes, A.C.A. § 16–66–218(b)(1) and (2) also reference other personal property exemptions provided under the Arkansas Constitution which

der the Arkansas opt-out statute and, therefore, the test for geographic uniformity is satisfied. Further, the provisions of § 16–66–218 serve to provide debtors with an opportunity for a "fresh start" and do not conflict with the spirit and intent of the Bankruptcy Code.[8] Section 16–66–218, therefore, does not violate the uniformity requirements of the bankruptcy clause of the United States Constitution.

**FSLIC Does Not Have Standing to Challenge the Constitutionality of A.C.A. § 16–66–218 as a Violation of the Uniformity Requirements of the Bankruptcy Clause of Article 1, § 8, Clause 4 of the United States Constitution**

■ FSLIC also has alleged that A.C.A. § 16–66–218 is unconstitutional under the uniformity requirements of the bankruptcy clause because § 16–66–218 contains exemptions which are available only to bank-

ruptcy debtors and not to nonbankruptcy debtors.[9] The Court finds that FSLIC does not have standing to challenge the constitutionality on this ground.

■ In order to have standing for constitutional purposes, FSLIC must demonstrate that the enactment of A.C.A. § 16–66–218 has some actual or potential detrimental impact upon it in the debtors' bankruptcy proceedings. *See, e.g., Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979); *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 36–37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). FSLIC also must have a personal stake in the outcome of the litigation. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978).

have no similar counterpart under the federal exemption scheme.

*Compare* § 522(d)(2) *with* § 16–66–218(a)(2). Both of these subsections provide for an exemption of a debtor's interest in a vehicle not to exceed $1,200.

*Compare* § 522(d)(3) *with* § 16–66–218(b)(1) and (2). Under Arkansas law an unmarried debtor may claim $200 and a married debtor may claim $500 in personal property. Under the federal exemptions, a debtor may not claim over $4,000 in personal property subject to a limitation of $200 per item.

*Compare* § 522(d)(4) *with* § 16–66–218(a)(3). Under Arkansas law, a debtor or spouse may claim wedding bands including diamonds not exceeding one-half carat. The federal exemptions allow a debtor to choose jewelry valued at not more than $500 to be claimed as exempt.

*Compare* § 522(d)(6) *with* § 16–66–218(a)(4). The same "tools of the trade" exemption is allowed under state law as under federal law.

*Compare* § 522(d)(7) and (8) *with* § 16–66–218(b)(7), (9), (10) and (11). Under Arkansas exemptions, certain insurance proceeds and benefits in addition to life insurance benefits are allowed to be claimed as exempt. The Federal Exemption Statutes limit the insurance policies which may be claimed as exempt to life, health and accident insurance benefits.

*Compare* § 522(d)(10) *with* § 16–66–218(b)(8), (13), (14) and (15) although there are some differences under Arkansas law and the federal exemptions, a debtor may exempt certain benefits such as worker's compensation benefits, public assistance benefits, unemployment compensation. The federal exemptions appear to be more liberal in these exemptions for benefits other than the Arkansas exemptions.

Arkansas law provides no counterpart for federal exemptions contained in § 522(d)(5) and (9). Section 522(d)(5) provides for a "floating" exemption where a debtor may claim an interest in property not to exceed $400 as exempt, plus amounts up to $3,750 which were unused under § 522(d)(1). Section 522(d)(9) allows an exemption for professionally prescribed health aids. Also, § 16–66–218(b)(16) provides an exemption for individual retirement accounts for which there is no federal counterpart. There also appears to be no federal counterpart for § 16–66–218(b)(8) for state police retirement benefits.

8. The Arkansas legislature, in enacting the opt-out statutes, considered federal exemptions, because the exemptions contained in § 16–66–218(a) parallel § 522(d) exemptions. *Compare* § 16–66–218(a)(1) *with* 11 U.S.C. § 522(d)(1); A.C.A. § 16–66–218(a)(2) *with* 11 U.S.C. § 522(d)(2); A.C.A. § 16–66–218(a)(3) *with* 11 U.S.C. § 522(d)(4); *and* A.C.A. § 16–66–218(a)(4) *with* 11 U.S.C. § 522(d)(6).

9. For an article which discusses exemptions for bankruptcy and non-bankruptcy debtors, *see* Laurence, *Exemption Law and the Non–Bankrupt Judgment Debtor—A Look at Ark.Stat.Ann. § 36–211,* Ark. Law Notes, Univ. of Ark. School of Law 19–24 (1986). The Court also notes that Professor Robert Laurence of the University of Arkansas School of Law at Fayetteville, the author of the above article also wrote an amicus curiae brief in a previous bankruptcy case before this Court, *In re Hardekoff,* No. FA 82–129, which contained a helpful analysis of the pertinent constitutional issues in this case. *See* Amicus Curiae Brief of Robert Laurance, *In re Hardekopf,* No. FA 82–129 (Bankr.W.D.Ark. August 26, 1984).

FSLIC is not a debtor in this proceeding and is not entitled to claim the benefits or detriments of any exemptions. Further, FSLIC is objecting to the debtors' claims of exemptions under A.C.A. § 16–66–218(b)(7), an exemption which is available to both bankruptcy debtors and non-bankruptcy debtors in Arkansas. Resolution of the issue of whether the bankruptcy only exemptions are constitutional will not have an impact on the debtors' entitlement to claim exemptions under § 16–66–218(b)(7). Therefore, the Court will dismiss FSLIC's challenge on these grounds for lack of standing.

**A.C.A. § 16–66–209, a Bankruptcy Exemption Pursuant to A.C.A. § 16–66–218(b)(7), Does not Create an Absolute Exemption and is Limited by Article 9, § 2 of the Arkansas Constitution**

■ FSLIC has argued that A.C.A. § 16–66–209 does not create an absolute exemption and that § 16–66–209 is limited by article 9, § 2 of the Arkansas Constitution. Alternatively, FSLIC has argued that if § 16–66–209 is found to create an absolute exemption, then § 16–66–209 should be found to be unconstitutional in view of the personal property exemption limits in article 9, § 2 of the Arkansas Constitution. The debtors have contended that § 16–66–209 created an absolute exemption available to debtors in bankruptcy proceedings pursuant to A.C.A. § 16–66–218(b)(7). The debtors also have asserted that § 16–66–209 is a valid exemption consistent with article 9, § 2 of the Arkansas Constitution and/or 11 U.S.C. § 522.

An analysis of § 16–66–209 for bankruptcy purposes should begin with an examination of Arkansas' bankruptcy exemption statutes, enacted in 1981 and codified at A.C.A. §§ 16–66–217 and 16–66–218. A.C.A. § 16–66–217 provides that "[t]he applicable exemptions [are] to be those [exemptions] permitted by the constitution and the laws of the State of Arkansas." A.C.A. § 16–66–217 (1987). A.C.A. § 16–66–218,

the actual exemption statute, contains two subsections. Subsection (a) contains exemptions which are available only to debtors in bankruptcy while subsection (b), with one exception,[10] enumerates exemptions available to Arkansas bankruptcy debtors as well as Arkansas non-bankruptcy debtors. Subsection (a) states, "The following property shall be exempt from execution pursuant to Public Law 95–598." The items contained in § 16–66–218(a)(1) through (a)(4) parallel exemptions contained in 11 U.S.C. § 522(d), with some adaptations for Arkansas purposes. Subsection (b) of § 16–66–218 references exemptions which are available under the Arkansas Constitution and laws. The introduction to § 16–66–218(b) states, "The exemptions granted in subsection (a) of this section shall be in addition to the present exemptions granted by Arkansas law as listed below." A.C.A. § 16–66–218(b).

The debtors have asserted that the exemptions provided under both subsections (a) and (b) are available in bankruptcy without limitation. However, this Court does not interpret all provisions of § 16–66–218 as creating unlimited exemptions for bankruptcy purposes. The exemptions contained in § 16–66–218(a) were enacted pursuant to powers granted by federal law to the states pursuant to 11 U.S.C. § 522(b). The bankruptcy-only exemptions preempt state law to the extent that they were enacted under federal powers. The exemptions contained in § 16–66–218(b), however, are limited to the interpretation given them under Arkansas law. The Arkansas Legislature provided that the exemptions available to Arkansas bankruptcy debtors under subsection (b) would be those exemptions available under the Arkansas Constitution and Arkansas laws. To interpret the § 16–66–218(b) exemptions available under the Arkansas Constitution and Arkansas laws, Arkansas state law must be considered, and the exemption allowed for

---

**10.** The one exception is the recently enacted § 16–66–218(b)(16) which provides for an exemption for an individual retirement account for bankruptcy purposes, which does not have a counterpart in Arkansas state law. The Court suspects that this exemption was improperly classified in the statute, but cannot circumvent the bare language of the statute.

bankruptcy debtors as allowed under state law limitations.

The debtors have urged that the constitutionality of § 16–66–209 has been determined previously. FSLIC argues that § 16–66–209 has been declared unconstitutional previously. Although § 16–66–209 has been challenged on constitutional grounds previously, the constitutionality of § 16–66–209 has never been addressed under article 9 of the Arkansas Constitution.

In *W.B. Worthen v. Thomas*, 188 Ark. 249, 65 S.W.2d 917 (1933), *rev'd*, 292 U.S. 426, 54 S.Ct. 816, 78 L.Ed. 1344 (1934), the constitutionality of Ark.Stat.Ann. § 30–208 (1979), now codified at A.C.A. § 16–66–209 (1987), was challenged under the impairment of obligation of contract provisions of article I, section 10 of the United States Constitution and article II, section 17 of the Arkansas Constitution. In *Worthen*, a non-bankruptcy debtor sought to avoid garnishment of insurance policy proceeds held by an insurance company to satisfy a judgment under § 16–66–209. A writ of garnishment had been served on the insurance company on March 10, 1933, prior to the enactment of the statute on March 16, 1933. *See* 1933 Ark. Acts 102, codified at A.C.A. § 16–66–209 (1987). The Arkansas Supreme Court upheld the constitutionality of § 16–66–209 and found that § 16–66–209 did not violate the impairment of obligation of contract provisions. In upholding the constitutionality of § 16–66–209, the Arkansas Supreme Court cited a previous case, *Acree v. Whitley*, 136 Ark. 149, 206 S.W. 137 (1918), and noted that the statute did not violate the impairment of obligation of contract provisions because the statute created an exemption for garnishment proceedings only, "not for the purpose of allowing beneficiaries exemptions which they are not entitled to under the Arkansas Constitution and laws of this state." *Id.* at 253, 65 S.W.2d at 918 (quoting *Acree v. Whitley*, 136 Ark. at 154, 206 S.W. at 138). Upon appeal, the United States Supreme Court reversed. The Supreme Court first examined the statute and stated:

> The exemption created by the Act of 1933, as to the avails of life insurance policies is unlimited. There is no limitation of amount, however large. Nor is there any limitation as to beneficiaries, if they are residents of the state. There is no restriction with respect to particular circumstances or relations. "All monies paid or payable" to any resident of the state "as the insured or beneficiary designated" under any life insurance policy are exempted from liability or seizure from judicial process and "shall not be subject to the payment of any debt." The profits of a business, if invested in life insurance may thus be withdrawn from the pursuit of creditors to whatever extent desired. No conditions are imposed, save that assignees, mortgagees or pledgees of policies are protected.

> Such an exemption, applied in the case of debts owing before exemption was created by the Legislature, constitutes an unwarrantable interference with the obligation of contracts in violation of the Constitutional provision.

292 U.S. at 431–32, 54 S.Ct. at 818 (citations omitted).

Although as urged by FSLIC, the statute was held to be unconstitutional, § 16–66–209 was held unconstitutional as retroactively applied in *Worthen* to debts and contracts executed prior to the enactment of the statute under the impairment of obligation of contract provisions of the United States Constitution and Arkansas Constitution. Even if *Worthen* were interpreted as upholding § 16–66–209, the fact that the determination was made for garnishment purposes does not resolve the constitutionality issue in this case. Therefore, the issues before the Court in this case are issues of first impression.

Although no cases have interpreted the constitutionality of A.C.A. § 16–66–209 under article 9 of the Arkansas Constitution or as applied since its enactment, cases involving similar statutes have been decided. In *Acree v. Whitley*, 136 Ark. 149, 206 S.W. 137 (1918), the Arkansas Supreme Court addressed the constitutionality of a statute which provided that no money or other benefit paid from a fraternal benefit society was liable for attachment, garnish-

ment or other process.[11] The supreme court found that the statute did not violate sections I or II of article 9 of the Arkansas Constitution because the statute did not relate to an absolute exemption of personal property from execution but only related to garnishment proceedings. The supreme court stated:

> It may be stated at the outset that § 21 [1917 Ark. Acts 462] does not relate to the absolute exemption of personal property allowed a resident of this state is exempt from certain debts and liabilities under §§ I and II of article 9 of our Constitution. The reason is beneficiaries in insurance policies, as well as other persons, are obligated to pay judgments against them in favor of third persons and exemptions from execution and other process of the Court are fixed by sections of the Constitution above referred to. The statute in question was not enacted for the purpose of allowing beneficiaries exemptions which they are not entitled to under the Constitution and laws of this state, but the Act was passed for the purpose of exempting these funds from the operation of our general statutes regulating the issuance of garnishments and proceedings thereunder.

*Id.* at 153–54, 206 S.W. at 138. The supreme court then held that the fund was exempt from garnishment proceedings under the statute.

Although similar issues were involved in *Acree* as in this case, the decision in *Acree* was limited to garnishment proceedings. In this case, the debtors are seeking to claim property exempt from execution in bankruptcy proceedings, not garnishment proceedings. Therefore, *Acree* is not determinative for the purposes of providing exemptions from execution in bankruptcy proceedings.

In *Sanford v. Otasco, Inc.*, 268 Ark. 100, 590 S.W.2d 285 (1980), the question of the constitutionality of Ark.Stat.Ann. § 30–207 (1979), now codified at A.C.A. § 16–66–208 (1987) and referenced in A.C.A. § 16–66–218(b)(6), a statute providing for the exemption of sixty days' wages from the garnishment or execution was addressed. The Arkansas Supreme Court found it unnecessary to reach the constitutional issues because the supreme court determined that § 16–66–208 was limited by article 9 of the Arkansas Constitution. The supreme court held that an individual could claim wages and personal property as exempt if the total amount claimed as exempt did not exceed the $500 limit established in article 9, section 2 of the Arkansas Constitution. "The constitution simply allows a person to select personal property, having a value not in excess of $500 as exempt from seizure or attachment or sale or execution." *Id.* at 101, 590 S.W.2d at 286. The supreme court noted that the statute was "intended to apply to persons who owned little, if any, personal property other than wages due for services performed" and allowed personal property exemptions to include wages as well as other personal property up to the constitutional limits set in article 9. Any personal property above the amounts established in article 9 was subject to execution. *Id.* at 103–04, 590 S.W.2d at 287. *See* A.C.A. §§ 16–66–208 and 16–66–211.

The holding in *Sanford* is analogous to the present situation. The debtor in *Sanford* was attempting to claim wages as exempt personal property. The supreme court allowed the debtor to claim the exemption, but found the exemption was not "absolute" and was limited by article 9 of the Arkansas Constitution.

Section 16–66–208, unlike § 16–66–209, does specify in its text that the wage exemption claim is subject to constitutional

---

11.  1917 Ark. Acts 462, p. 2081 stated:
    No money or other benefit, charity or relief or aid to be paid, provided or rendered by any such society shall be liable to attachment, garnishment or other process, or be seized, taken, appropriated or applied by any legal or equitable process or operation of law to pay

any debt or liability of a member or beneficiary, or any other person who may have a right thereunder either before or after payment.
A substantially identical statute was re-enacted by 1959 Ark. Acts 148 § 611, p. 8, now codified at A.C.A. § 23–74–119 (1987).

limitations. However, the fact that § 16–66–209 does not state that its provisions are limited by the Arkansas Constitution does not lead this Court to conclude automatically that the statute creates an unlimited or absolute exemption for debtors in bankruptcy.

It is well established that legislative action cannot override constitutional provisions. *Peugh v. Oliger,* 233 Ark. 281, 285, 345 S.W.2d 610, 613 (1961); *Smith v. Faubus,* 230 Ark. 831, 837, 327 S.W.2d 562, 566 (1959). Although a legislature may rightfully exercise the constitution's powers, the legislature is subject to the limitations and restrictions of the constitution. *Wells v. Purcell,* 267 Ark. 456, 464, 592 S.W.2d 100, 105 (1979); *Jones v. Mears,* 256 Ark. 825, 827–28, 510 S.W.2d 857, 859 (1974). An act of the legislature is presumed to be constitutional and will not be held by a court to be unconstitutional unless there is a clear incompatibility between the Act and the Constitution with reasonable doubt resolved in favor of constitutionality. *Jones v. Mears, Id.* at 828, 510 S.W.2d at 859; *Bush v. Martineau,* 174 Ark. 214, 216, 295 S.W. 9, 10 (1927).

A.C.A. § 16–66–209, as enacted, provides an exemption for the avails, proceeds or benefits of an insurance policy. The clear language of article 9, § 2 of the Arkansas Constitution limits the amounts of personal property which a married debtor may claim as exempt. Although no cases were located which were directly on point with the present situation, the Court can conclude that under Arkansas law, personal property encompasses an insurance policy, as well as the avails, proceeds and benefits from a policy. *See Turner v. Estate of Fletcher,* 252 Ark. 917, 920, 483 S.W.2d 176, 178 (1972); *Ray v. Manatt,* 250 Ark. 230, 241, 465 S.W.2d 111, 117 (1971). Although on its face, A.C.A. § 16–66–209 creates an unlimited exemption, § 16–66–209 directly conflicts with article 9, § 2 of the Arkansas Constitution to the extent that § 16–66–209 allows for an exemption of more than $500 in personal property. Under present Arkansas law, the Arkansas Constitution takes precedence over statutory enactments. The Arkansas Legislature, in enacting the bankruptcy exemption statutes, A.C.A. § 16–66–218 (Supp.1987), elected to distinguish between subsection (a) which grants debtors absolute exemptions pursuant to federal law and subsection (b) which expressly states, "The exemptions granted in subsection (a) of this section shall be *in addition to the present exemptions granted by Arkansas law as listed below."* A.C.A. § 16–66–218(b) (Supp.1987) (emphasis supplied). The provision allowing bankruptcy debtors to claim the avails, proceeds or benefits of insurance policies as exempt was placed under subsection (b) of § 16–66–218 by the Arkansas Legislature and must be interpreted under present Arkansas law. *See* A.C.A. § 16–66–218(b)(7). Under present Arkansas law, § 16–66–218(b)(7) does not create an absolute exemption, but is limited by article 9, § 2 of the Arkansas Constitution. It is not a prerogative of this Court to rewrite A.C.A. § 16–66–218 to include subsection (b)(7) under the provisions of subsection (a) to allow an absolute exemption. If the Arkansas Legislature had intended to make the insurance exemption available without limitation for bankruptcy purposes, the Legislature could have included the exemption in subsection (a) rather than subsection (b). Even though the limitations contained in the statute may have been the result of faulty drafting and the Legislature may have intended to draft a bankruptcy exemption statute which granted unlimited exemptions for insurance policies, proceeds and avails, the statute itself does not manifest that express intent. The Court's function is judicial, not legislative, and the Court can not rewrite the statute, but only interpret the statute as enacted.

The Court is aware of cases which emphasize that exemption provisions should be construed liberally in favor of debtors, *Sanford v. Otasco,* 268 Ark. at 103, 590 S.W.2d at 287; *Pemberton v. Bank of Eastern Ark.,* 173 Ark. 949, 955, 294 S.W. 64, 66 (1927). However, in this case, the Court can not ignore or circumvent the limitations established in the Arkansas Constitution. Therefore, a married debtor may claim insurance proceeds as exempt

under § 16–66–209 only if the proceeds, along with other personal property exemptions, do not exceed $500, the personal property exemption limit under the Arkansas Constitution.

■ In the present cases, Marcia Nell Holt and Marvin Joe Holt, in their respective bankruptcy cases, may include insurance proceeds and cash values of insurance policies under § 16–66–209, as part of the personal property exemptions granted by article 9, § 2 of the Arkansas Constitution. Any amounts over the constitutional limits established in article 9, § 2, will be considered non-exempt and available for distribution to the debtors' creditors pursuant to the Bankruptcy Code. Therefore, the Court will sustain the objection to the debtors' exemptions filed by FSLIC to the extent that the debtors have claimed more personal property under A.C.A. § 16–66–209 than allowed by article 9 of the Arkansas Constitution. The exemption claims of the debtor, Mary Nell Holt, regarding insurance proceeds payable to her as beneficiary and the cash values of life insurance policies on her life will be denied to the extent that the claims exceed $500 of personal property values. Also, the exemption claims of the debtor, Marvin Joe Holt, regarding the cash values of insurance policies on his life will be denied to the extent that the claims exceed $500 of personal property values.[12]

**The Debtors' Conversion of Non–Exempt Property into Exempt Property on the Eve of Bankruptcy was Permissible Under the Bankruptcy Code**

On the eve of bankruptcy, Marsha Nell Holt cashed a certificate of deposit in the amount of $10,700 and used the proceeds to purchase a life insurance policy on her life. On the date of filing the policy had a cash surrender value of $10,000. Also on the eve of bankruptcy, Marvin Joe Holt cashed an annuity and received $6,491.88, which he used to increase insurance policy coverage from $100,000 to $200,000. On the date of filing, Marvin Joe Holt's policy had a cash surrender value of $6,000. In their bankruptcy schedules, both debtors claimed the policies and the cash values as exempt.

FSLIC has challenged the debtors' conversion of the non-exempt property into exempt property on the grounds that the conversion violated the Arkansas fraudulent conveyance statute, A.C.A. § 4–59–204 (1987).[13] FSLIC alleges that the transfer was made with the intent to hinder, delay or defraud creditors and, therefore, the statute was violated. Further, FSLIC has alleged that the debtors' conversion of non-exempt assets to exempt assets was an abuse of the bankruptcy system. The debtors contend that their conversion of assets is permissible under the Bankruptcy Code.

■ A debtor may convert non-exempt assets into exempt assets on the eve of bankruptcy. *In re Lindberg,* 735 F.2d

---

**12.** The Court notes that it has previously held insurance policies cash values of life insurance policies to be exempt in bankruptcy proceedings. These cases involved an interpretation of A.C.A. § 16–66–218(b)(7). None of these cases involved a constitutional challenge of § 16–66–218(b)(7). *In re Johnson,* 66 B.R. 39 (Bankr.W.D.Ark.1986), *aff'd,* 85 B.R. 518 (W.D. Ark.1987). *See. e.g., In re Duckett,* 65 B.R. 545 (Bankr.W.D.Ark.1986), *aff'd,* Civil No. 86–4088 (W.D.Ark. Nov. 26, 1986), *aff'd,* 837 F.2d 480 (8th Cir.1987); *In re Weiler,* 65 B.R. 564 (Bankr.E. D.Ark.1986).

**13.** A.C.A. § 4–59–204 (1987), since replaced, stated at the time FSLIC's objection was filed:
　(a) Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in

action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree, or execution, made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures, debts, or demands, as against creditors and purchasers prior and subsequent, shall be void.
　(b) No such conveyance or charge shall be deemed void in favor of an innocent subsequent purchaser, if the deed or conveyance shall have been duly acknowledged or proved and recorded, or the purchaser has at the time of his purchase notice thereof, unless it appears that the grantee in the conveyance or person to be benefited by such charge was party or privy to the fraud intended.

1087, 1090 (8th Cir.1984) *cert. denied sub. nom., Armstrong v. Lindberg,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984); *Crawford v. Sternberg,* 220 F. 73 (8th Cir. 1915). *See also In re Daniel,* 771 F.2d 1352, 1358 (9th Cir.1985); *and Ford v. Poston,* 773 F.2d 52, 54 (4th Cir.1985). In fact, Congress, in enacting the Bankruptcy Code, contemplated such conversions.

> As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors and permits the debtor to make full use of the exemptions to which he is entitled under the law.

H.R.Rep. No. 595, 95th Cong..1st Sess. 361 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6317. S.Rep. No. 95–989, 95th Cong., 2d Sess. 76 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5862.

■ Conversions of non-exempt assets and exempt assets are not without limitations however. The conversion of assets must not be done with the intent to conceal, hinder, delay or defraud creditors. *See McCormick v. Security State Bank,* 822 F.2d 806 (8th Cir.1987) (debtors' conduct manifested intent to delay or hinder creditor warranting denial of discharge); *Ford v. Poston,* 773 F.2d 52 (4th Cir.1985) (where extrinisic evidence to show fraud was present, debtor's transfer of non-exempt property to exempt property was subject to provisions of 11 U.S.C. § 727) *and In re Reed,* 700 F.2d 986 (5th Cir.1983) (debtor's conduct in converting non-exempt assets to exempt assets showed actual intent to defraud creditors warranting denial of discharge).

■ In the present case, no evidence has been presented to the Court that the debtors converted non-exempt assets to exempt assets with the intent to conceal, hinder, delay or defraud creditors under the Bankruptcy Code or under the Arkansas Fraudulent Conveyance Statute which would bar the debtors' exemption claims. Therefore, the Court finds that the debtors' conversion of exempt assets to non-exempt assets even on the eve of bankruptcy was permissible.

An Order consistent with this Memorandum Opinion will be entered of even date.

## ORDER

Based on the Memorandum Opinion of even date, the Court makes the following ruling:

1. The Arkansas exemption statutes, A.C.A. §§ 16–66–217 and 16–66–218 (1987 and Supp.1987), are consistent with the federal exemptions provisions of 11 U.S.C. § 522 and do not violate the uniformity provisions of the bankruptcy clause of the United States Constitution, U.S. Const., Art. I, § 8.

2. Federal Savings & Loan Insurance Corporation (FSLIC) does not have standing to challenge the constitutionality of A.C.A. § 16–66–218 on the grounds that the section violates the uniformity provisions of the bankruptcy clause of the United States Constitution by providing different exemptions to Arkansas bankruptcy debtors and Arkansas non-bankruptcy debtors.

3. A.C.A. § 16–66–218(b)(7), which references A.C.A. § 16–66–209 (1987), is constitutional under the Arkansas Constitution, but does not create an absolute exemption and is limited by article 9, § 2 of the Arkansas Constitution.

4. The Objection of Exemptions filed by FSLIC is sustained. The exemption claims of the debtor, Mary Nell Holt, regarding insurance proceeds payable to her as beneficiary and the cash values of life insurance policies on her life are denied to the extent the claims exceed $500 of personal property values. Likewise, the exemption claims of the debtor, Marvin Joe Holt, regarding the cash values of life insurance policies on his life are denied to the extent those claims exceed $500 of personal property values.

IT IS SO ORDERED.